## D. B. GRIGSBY ET AL. v. M. A. MAY ET AL.

### No. 3124.

1. **Severance in Trespass to Try Title.** — In an action of trespass to try title for an undivided interest and against numerous defendants, the plaintiffs in the petition tendered to any defendant who asserted claim to a particular part of the land sued for a separate trial, with partition of the particular tract. A defendant owning in severalty a part of the land claimed was by the court granted a severance. At a subsequent term plaintiffs moved to set aside the order for severance, on the alleged ground that difficulties might arise in reference to the adjustment of equities in partition. *Held*, that the trial court properly overruled the motion to consolidate, or to set aside the severance.

2. **Application for Continuance.** — After the order refusing to set aside the order for severance, the plaintiffs moved a continuance on the ground of surprise caused by the ruling, and the further reason that a cause was undisposed of on appeal in which plaintiffs litigated with another owner of a tract separate from that in controversy. *Held*, the application sh)wed no grounds for continuance.

3. **Limitation—Title—Heirs.** — Patent "to the heirs of John Grigsby, deceased," vested *title* within the meaning of the statute of limitations in those who were in law the heirs of John Grigsby, as fully as would it had each of those persons been named; and the fact that the heirs of the second wife of Grigsby through her had a superior right to her community interest in no manner affects the character of the title in so far as that bears upon the question of limitation.

4. **Same.** — While heirs to whom patent is granted as such take under the patent by descent and not by purchase, this does not affect the fact that the title, the evidence of right the State gave, was to the heirs—to the persons who, under the law, were entitled to inherit the property owned by the named ancestor.

5. **Title—Patent to Heirs.** — Patent to heirs is title from the sovereignty of the soil to them within the meaning of the statute of limitations, which has reference to a grant in form and not to the fact of ownership.

6. **Limitation of Three Years.** — A patent to the heirs of John Grigsby must be deemed *title*—"a regular chain of transfer from or under the sovereignty of the soil" to the heirs.

7. **Partition in Probate Court.** — A decree of partition in the Probate Court having jurisdiction of the estate is a regular chain in the title to the subdivisions allotted to those taking in the partition. Its regularity is not affected by equitable ownership in the land in others.

8. **Cases Discussed.** —Thompson v. Cragg, 24 Texas, 582; Veramendi v. Hutchins, 48 Texas, 531, discussed.

9. **Grant to Heirs.** —The heirs taking under a patent to them have power to convey such title as accrued to them by the patent. A partition in the administration upon the estate of the ancestor operates as a conveyance to the heirs in severalty. Such partition operates as if all the heirs had joined in a conveyance to each in severalty for his allotted part.

10. **Cases Discussed.** —Cox v. Bray, 28 Texas, 262; Hussey v. Moser, 70 Texas, 42, discussed. Also, Wright v. Daily, 26 Texas, 730; Elliott v. Whitaker, 30 Texas, 412; Allen v. Root, 39 Texas, 599; Gould v. West, 32 Texas, 339; Harris v. Hardeman, 27 Texas, 249; Long v. Brenneman, 59 Texas, 213; Brownson v. Scanlan, 59 Texas, 225; Paxton v. Meyer, 67 Texas, 97; Blum v. Rogers, 71 Texas, 677.

11. **Limitation—Notice of Superior Title.** — The statute of limitations does not make *notice* of supérior right in another a ground for denying to a person who has

had peaceable and adverse possession of land for three years, claiming it under a regular chain of transfer from or under the sovereignty of the soil, that full protection which the statute gives; and the question of intrinsic fairness and honesty only becomes important where claim is asserted under "color of title." But in neither case will notice of a superior title alone affect the right of one claiming under limitation of three years, and establishing the statutory conditions. Burdett v. Silsbee, 26 Texas, 163.

12. **Limitation—Reversion After Life-Estate.**—The statute of limitations began to run against the mother of appellant Aspley in 1854, and we do not see that limitation could be interrupted as to any right she may have had, by her death in 1868, whereby a life-estate in one-third of her interest was cast upon her husband.

13. **Cross-Bill by a Defendant.** — A defendant claiming land in controversy against his codefendant will not be considered as having filed his action so as to stop limitation until his claim be set up in his answer or cross-bill. Limitation as to his interest is not stopped by the original suit against his codefendants.

14. **Pleadings Where Severance is Granted.**—It seems that where a severance is granted in favor of a defendant he will not be affected by pleadings subsequently filed in the main suit.

15. **Disqualification of District Judge.** — Interest in a question to be determined does not disqualify a judge of a District Court, but is made a disqualification of a judge of the Court of Appeals or of the Supreme Court.

APPEAL from Dallas. Tried below before Hon. A. S. LATHROP, Special District Judge.

The facts are sufficiently stated in the opinion. Different branches of this suit have been in this court. See Peak v. Swindle, 68 Texas, 242; Grigsby v. Peak, Id., 235; Grigsby v. Peak, 57 Texas, 142; Caruth v. Grigsby, Id., 259; and Grigsby v. Caruth, Id., 269.

*Richard Morgan* and *Jeff Word, Jr.*, for D. B. Grigsby, Maria Louisa Swindle, and C. C. Swindle, appellants.—1. Aside from such questions as might be raised under a plea of nonjoinder or misjoinder, it is the absolute right of the plaintiff to determine who shall be joined as defendants to his suit; and when he has joined two or more as defendants, none of them can claim a severance (i. e., a separate trial) as a matter of right. In cases, however, where, if he had seen proper so to do, the plaintiff might have sued each defendant separately, the court may in the exercise of a sound discretion grant to one or more of the defendants a separate trial; provided, that in so doing the justice of the case will in some way be promoted, without in any way prejudicing or embarrassing the plaintiff in the prosecution of his suit. But if to grant a severance to one or more of the defendants tends, as in the case now before the court, to delay or otherwise prejudice the plaintiff in his suit against the other defendants, then the court may not rightfully grant such severance. Chambers v. Fisk, 9 Texas, 262; Chambers v. Fisk, 15 Texas, 347; Walton v. Payne, 18 Texas, 62; Ballard v. Perry, 28 Texas, 362; Snider v. Methvin, 60 Texas, 489, 490; Grigsby v. Peak, 68 Texas, 242; Peak v. Swindle, 68 Texas, 253; Boone v. Hulsey, 71

Texas, 184, 185; Railway v. Ide, 114 U. S., 56, citing Smith v. Rines, 2 Sumner, 348; Gates v. Salmon, 35 Cal., 592, 593, 597, 598, 601.

2.  Plaintiffs proved such title in themselves to the land sued for by them as entitled them to a verdict for the same, unless defendant May and intervenor Hughes could have successfully defended under their plea of the statute of limitation of three years. And the title under which said defendant and intervenor were proved to have held the 290 acres of land claimed by them was not such title or color of title as is necessary to support a plea of the statute of limitation of three years.

John Grigsby and his wife Louisa were married in Illinois and moved to Texas in the year 1835, and settled in Houston County, where they resided until they died. That part of Houston County in which they lived afterward became a part of Anderson County. John Grigsby died in 1841. His said wife Louisa survived him, and afterward married Balis Edens, and died in 1843. John Grigsby had only two children by his said wife Louisa, the plaintiff Daniel B. Grigsby, who was born in 1841, and a daughter, Emeline, now dead, who was the mother of the defendant Robert F. Aspley. The only issue of the marriage of John Grigsby's widow with Balis Edens was one daughter, Maria Louisa Edens, born in 1843, who is now the plaintiff Maria Louisa Swindle, she having married C. C. Swindle.

The land claimed by defendant May and intervenor Hughes is a tract of 290 acres out of the James A. Sylvester 640 acres survey, which was the community property of John Grigsby and his wife Louisa. This 640 acres survey was located by virtue of a certificate for 640 acres issued to James A. Sylvester in 1838, sold by James A. Sylvester to Samuel L. Davidson in 1838, and by Samuel L. Davidson sold and delivered to John Grigsby. No written conveyance of the certificate was made by Samuel L. Davidson until after John Grigsby's death, when he executed a written conveyance to John Grigsby's administrator, Balis Edens, in which he recited the facts of the sale and delivery to John Grigsby in his lifetime. This 640 acres was patented February 9, 1846, to "the heirs of John Grigsby, deceased, assignee of James A. Sylvester." John Grigsby left surviving him, besides the children mentioned above, seven other children, who were the issue of a marriage prior to his said marriage with the said Louisa. One of these seven children was named James Grigsby.

The defendant Mary A. May is the widow of A. J. May. The adverse possession relied on by appellees commenced in 1853, when the defendant Mary A. May's said husband A. J. May bought the said 290 acres and built upon and fenced said land, and moved on the same with his said wife. The chain of title under which they held possession of said land, read in evidence by appellees, was as follows: A deed from the aforesaid James Grigsby to A. J. May for said 290 acres;

deed from the administrator of John Grigsby to James Grigsby for all his interest as administrator of said estate in said 290 acres; a transcript from the Probate Court of Anderson County of the proceedings in the administration of the estate of John Grigsby for the partition of said estate, and the aforesaid patent to the heirs of John Grigsby.

The said transcript of the record of said administration proceedings in Anderson County, read in evidence by appellees, showed that the said James A. Sylvester 640 acres survey was the community property of John Grigsby and his said wife Louisa; and showed all the facts herein above stated in regard to their family history.

This suit was begun August 18, 1874. Appellant Maria Louisa Swindle was married the first time August 24, 1859. There being no controversy as to the facts, plaintiffs requested the court to instruct the jury to return a verdict for plaintiffs. This the court refused to do, and instructed them to return a verdict against the plaintiffs, instructing them, that while the property in controversy was the community property of John Grigsby and his wife Louisa, and the plaintiffs as heirs of said Louisa had inherited from her the interest in said land sued for by them, and were entitled to recover it unless barred under the statute of limitation, and were not barred under either the ten or the five years statute of limitation, nevertheless they were barred under the three years statute of limitation. Allen v. Clark, 21 Texas, 404; Baker v. Compton, 52 Texas, 252; McKey v. Welch, 22 Texas, 391; Cox v. Bray, 28 Texas, 262, 263; Veramendi v. Hutchins, 48 Texas, 531; Johns v. Northcutt, 49 Texas, 445; Higgins v. Johnson, 20 Texas, 396; Steagall v. Huff, 54 Texas, 195; Paxton v. Meyer, 67 Texas, 97; Long v. Brenneman, 59 Texas, 213; Collins v. Miller, 64 Texas, 119; Lindsay v. Jaffray, 55 Texas, 635, 636; Blum v. Rogers, 71 Texas, 677; Adams & Wicks v. House, 61 Texas, 641; Hanks v. Crosby, 64 Texas, 484; Harris v. Catlin, 53 Texas, 1; Trammell v. McDade, 29 Texas, 364; Dorn v. Dunham, 24 Texas, 366; Thompson v. Cragg, 24 Texas, 582; Smith v. Power, 23 Texas, 29; Caruth v. Grigsby, 57 Texas, 259; Wilson v. Palmer, 18 Texas, 592; Snowden v. Rush, 69 Texas, 594; Brownson v. Scanlan, 59 Texas, 225; Handel v. Elliott, 60 Texas, 145; Brockenborough v. Melton, 55 Texas, 506; Saunders v. Silvey, 55 Texas, 46; Burkett & Murphy v. Scarborough, 59 Texas, 498; Hussey v. Moser, 70 Texas, 42; Akin v. Jefferson, 65 Texas, 144; Pasch. Dig., art. 4288a; Soye v. McCallister, 18 Texas, 97, 98; Marks v. Hill, 46 Texas, 349, 350; Peet, Yale & Bowling v. Street Railway, 70 Texas, 522; Lessee of Bond v. Swearingen, 1 Ohio, 395, 402, 405, 406, 411, 412; 1 Washb. Real Prop., pp. 58, 59; 3 Washb. Real Prop., pp. 1–4; Tied. Real Prop., sec. 36; Pome. Eq., secs. 366, 367, 147–159, 1100; Perry on Trusts, secs. 273, 298; 3 Washb. Real Prop., pp. 276–278; 2 Blacks. Com., *201, and note; Bige. on Estop., 381, 382.

3.  Where the presiding judge is interested in the subject matter of the controversy, or related within the third degree to any party so interested, he is disqualified to try said controversy.

*Evans & Gooch,* for appellant Aspley.—1. A decree in partition will not constitute such title or color of title as will support the plea of limitation of three years against the children suing as the heirs of their mother.  Thompson v. Cragg, 24 Texas, 582; Veramendi v. Hutchins, 48 Texas, 551; Saunders v. Silvey, 55 Texas, 48.

2.  The statute of limitations will not run against the remainderman or reversioner until after the termination of the estate for life by the death of the life-tenant.  Sayles' Early Laws, art. 3048; Floyd v. Terrell, 60 Texas, 284; Walker v. Young, 37 Texas, 519; White v. Bartlett, 34 Texas, 399; Rogers v. Trevathan, 67 Texas, 406; Bufford v. Holliman, 10 Texas, 560; Stowell v. Lord Zouch, 3 Pl. Rep., 374; 2 Cruise Dig., 498 Wood on Lim., p. 528, note 1, and authorities cited; Id., 481; Moore v. Luce, 29 Pa. St., 260; Stevens v. Winship, 1 Pick., 318; McCorry v. King's Heirs, 3 Humph. (Tenn.), 267; Jackson v. Moore, 6 Cowan (N. Y.), 727; Jackson v. Johnson, 5 Cowan (N. Y.), 74; Carpenter v. Schermerhorn, 2 Barb. Ch., 314.

*W. E. Hughes* and *Watts & Eldredge,* for appellees.—1. The court correctly overruled and refused the motion of appellants to vacate and set aside the order of severance to appellees in this case.  Snider v. Methvin, 60 Texas, 489; Ballard v. Perry, 28 Texas, 347; Boone v. Hulsey, 71 Texas, 184; Land Co. v. Wood, 71 Texas, 464; Chambers v. Fisk, 9 Texas, 262; Grigsby v. Peak, 68 Texas, 235; Peak v. Swindle, 68 Texas, 242.

2.  The uncontroverted facts of the case show that appellants Grigsby and Swindle were barred by the statute of limitation of three years. Patent to the heirs of John Grigsby, partition among these heirs, and deed from James Grigsby, to whom the 290 acres here sued for was allotted, is title, and such as will support the three years statute of limitation.  It is an unbroken chain from the sovereignty of the soil. It is title, not color of title.  Pearson v. Burditt, 26 Texas, 172; League v. Rogan, 59 Texas, 429; Edwards v. Brown, 68 Texas, 329; Pasch. Dig., art. 1348; 1 Dev. on Deeds, sec. 184; Freem. on Coten. and Par., 2 ed., secs. 227, 564; Cryer v. Andrews, 11 Texas, 181; Weisinger v. Murphy, 2 Head (Tenn.), 679; Elliott v. Mitchell, 47 Texas, 445; Whitehead v. Foley, 28 Texas, 9–15; Williamson v. Simpson, 16 Texas, 435; Caruth v. Grigsby, 57 Texas, 266, 267.

3.  The uncontroverted facts established by the evidence show the claim of appellant Aspley is barred by the three, five, and ten years statutes of limitation.  Emeline, the mother of appellant Aspley, mar-

ried February 24, 1854. May and family were then in actual occupancy of the land, and from thence to the time of the trial it was continuously occupied. It was occupied under recorded deed. All taxes were paid and the land used and cultivated. Emeline (Grigsby) Aspley died November 7, 1868. Appellant R. F. Aspley asserted claim to the land in this suit October 22, 1881. Authorities supra; Hunton v. Nichols, 55 Texas, 227; Parish v. Alston, 65 Texas, 198; Rev. Stats., art. 3225.

4. Judge Lathrop was not interested in this case, nor was either of the parties to the suit connected with him by affinity or consanguinity, and was therefore qualified to try the case. Henry Lathrop, the deceased son of the presiding judge, was not a party to the suit. The land owned by him was part of the John Grigsby league, and was not a part of the Sylvester survey. Const., art. 5, sec. 11; Rev. Stats., art. 1090; Taylor v. Williams, 26 Texas, 583; McFaddin v. Preston, 54 Texas, 403.

STAYTON, CHIEF JUSTICE.—This action was originally brought by D. B. Grigsby and Maria Louisa Swindle, on August 18, 1874, against between three and four hundred defendants, one of whom was R. F. Aspley, to recover the community interest of their mother in the John Grigsby league and labor of land, and in a survey of 640 acres of land granted by virtue of a certificate issued to James A. Sylvester.

Plaintiffs tendered to the several defendants who asserted claim to particular tracts of land in either of the grants the right to a severance, and Mrs. Mary A. May, who claimed 290 acres, described by metes and bounds, of the Sylvester survey, accepted the proposition to sever, and this appeal involves the right to no other land than this 290 acres.

Other branches of the case in which severances were accepted involving parts of the Grigsby league and labor have been before this court at former terms, and will be found reported in 57 Texas, 142, 259, and 269; and in 68 Texas, 235 and 242, where will be found a general history of the case.

This case, however, presents some questions not presented in any of the former appeals, and they arise upon the following facts:

As early as 1835 John Grigsby married his second wife, he then and at the time of his death having some children by a former wife, and by his second wife he had two children, who also survived him, and these were the plaintiff Daniel B. Grigsby and a daughter Emeline, now dead, who left one child—the defendant Robert F. Aspley. John Grigsby died in 1841, his wife surviving, and she intermarried with Balis Edens, by whom she had one daughter, now Mrs. Maria Louisa Swindle, the other plaintiff.

Mrs. Edens died in 1843, and Daniel B. Grigsby became of age in 1862, and Mrs. Swindle was born in 1843 and married in August, 1859; but, as will be observed, she was not a daughter of John Grigsby.

The league and labor of land granted to John Grigsby was community of himself and his second wife, as was the survey of 640 acres of land granted by virtue of the certificate issued to Sylvester. Sylvester sold that certificate to Samuel L. Davidson in 1838, and Davidson sold and delivered it to John Grigsby; but he made no written transfer of it until after the death of Grigsby, when he made a written conveyance of it to the administrator of Grigsby's estate, in which was recited the sale and delivery to Grigsby in his lifetime; and by virtue of that certificate the 640 acres of land was patented "to the heirs of John Grigsby, deceased, assignee of James A. Sylvester," on February 9, 1846.

The estate of John Grigsby was partitioned among his nine children by the Probate Court for Anderson County, each receiving an equal share out of the two grants before referred to; but nothing was given to his two children by his second wife or to her child by Edens, on account of her community interest in the two grants. To recover that interest plaintiffs brought this action; and on October 22, 1881, the defendant R. F. Aspley filed his answer and cross-bill, in which he sought to recover from the other defendants that part of the two grants to which he was entitled through inheritance from his mother Emeline, the daughter of John Grigsby and his second wife.

James Grigsby, a son of John Grigsby by his first wife, in the partition before referred to received the 290 acres of land in controversy, which, in pursuance of an order of the Probate Court, was conveyed to him by the administrator of his father's estate by a deed of date February 24, 1850, and conveyances were made to each of the other children in like manner for the lands allotted to them. James Grigsby conveyed the land in controversy to Andrew J. May, on January 25, 1853, who at once moved upon it with his family and continuously occupied it until his death, after which his family remained continuously in possession until sometime in 1886, when W. E. Hughes acquired whatever right passed to May, his wife, or heirs, after which he took possession. Hughes intervened, setting up as a defense the statutory bar of three, five, and ten years, among other defenses.

Emeline, the mother of R. F. Aspley, married February 24, 1854, and died on November 7, 1868, and the deeds through which May held appear to have been recorded or filed for record, and the payment of taxes from the time he purchased until the date of trial was shown.

The court instructed the jury—the evidence bearing on the question of limitation being uncontroverted—in effect, to find in favor of Mrs. May and the intervenor against the plaintiffs on the plea of three years

limitation, and to find against Aspley on their plea of limitation of ten years, and the finding was in accordance with the instructions.

A severance was granted to Mrs. May on June 29, 1881, and on January 31, 1889, plaintiffs moved the court to set the order granting a severance aside, which was overruled.

Of this ruling plaintiffs complain; but the record shows, that in their petition they tendered to any defendant who asserted claim to a particular part of the land sued for the right to a separate trial, with partition of the particular tract in case of success by plaintiffs. Under this a severance was accepted by Mrs. May, and so stood the case in court for more than seven years before plaintiffs sought to set it aside.

There was no claim that plaintiffs could not present their case as fully as though the case was on trial against all the persons made defendants by the original petition; and the sole ground on which they claimed a severance was, that in case of their success difficulties might arise in reference to the adjustment of equities growing out of the asserted common ownership if the entire controversy made by the original petition was not tried at the same time, and that there would be delay in partition if severances were permitted.

If these inconveniences existed, plaintiffs must be presumed to have known that they would exist when they tendered to Mrs. May a separate trial; and if all the inconvenience and delay in partition which plaintiffs seem, almost on the eve of trial, to have discovered really existed, even then we are of opinion that there was no error in the ruling of the court; which, however, becomes wholly unimportant if the judgment as to title be sustained.

After the ruling of the court refusing to set aside the order granting Mrs. May the right to a trial separately from the other defendants, plaintiffs made an application for continuance, on the ground that another case, between plaintiffs and another defendant who had accepted the offer of a separate trial and had tried his case, had not been finally decided on appeal, and on the further ground that the ruling before referred to was a surprise. The case referred to in the application for continuance involved other land than that in controversy between the parties to this appeal, and the decision of that case on appeal could have no bearing on the question of title involved in this. The court did not err in overruling the application.

Plaintiffs and the defendant Aspley all appeal, and in the main their rights depend on the same question.

This action was not instituted until August 18, 1874, and the adverse possession began in 1853, and has been kept up continuously.

As will be seen from the former statement, D. B. Grigsby became of age in 1862; the mother of appellant Aspley was a minor when the adverse possession began, but she married in 1854; Mrs. Swindle was also a minor when the adverse possession began, but she married in August,

1859; and from this statement it is evident that adverse possession was held against each of them for periods of more than three years before this action was brought, and while there was no suspension of the running of the statutes of limitation; from which it results that they were all barred when the action was brought, if limitation of three years has application to their claims.

Appellant Aspley is also barred by the period of ten years, unless the death of his mother in 1868, vesting in his father a life-estate in one-third of her interest, prevents the running of the statute against him as to this estate in remainder.

The question is thus directly presented, whether the title through which appellees claim is such as will support a plea of limitation of three years. The statute provides, that "Every suit to be instituted to recover real estate, as against any person in peaceable and adverse possession thereof, under title or color of title, shall be instituted within three years after the cause of action shall have accrued, and not afterward." Rev. Stats., art. 3191. "By the term 'title,' as used in the preceding article, is meant a regular chain of transfer from or under the sovereignty of the soil." Rev. Stats., art. 3192. That the cause of action accrued when James Grigsby sold to May and the latter took possession can not be denied, and that the possession from the first and continuously was peaceable and adverse until this action was brought must be conceded.

The patent "to the heirs of John Grigsby, deceased, assignee of James Sylvester," vested title, within the meaning of the statute, in those persons who were in law the heirs of John Grigsby, as fully as would it had each of those persons been named; and the fact that the heirs of the second wife of John Grigsby through her had a superior right to one-half of the grant in no manner affects the character of the title in so far as that bears on the question of limitation; and it is true that, although the patent was to the heirs of John Grigsby, the heirs of the second wife were not thereby divested of any right which they would have had if the land had been patented to John Grigsby. It must further be conceded, that the heirs of John Grigsby took under the patent by descent and not by purchase; but this does not affect the fact that the title, the evidence of right the State gave, was to the heirs of John Grigsby—to the persons who, under the law as it was at the time of his death, were entitled to inherit the property owned by him. The patent recognized the right of no one to any part of the land which it purported to grant except that of the heirs, and it must be held that it was title from the sovereignty of the soil to them, within the meaning of the statute, which has reference to a grant in form and not to the fact of ownership by the State at the time the grant is made, nor to the right of the patentee to receive the grant.

In case of a grant of land covered by a prior valid grant the State has no right to the land, and hence the patent of itself conveys no right; but it would not be claimed that an adverse possession for three years under the junior grant would not confer complete right to the land—would not confer title used in the sense of superior right to the land. The cases of League v. Rogan, 59 Texas, 427, and Burleson v. Burleson, 28 Texas, 417, illustrate the fact that it is not necessary for the person to whom a patent issues to be entitled to receive the grant in order for the patent to constitute "title" within the meaning of the statute applicable in this case. In the case first above named the patentee had no right to the land when the patent issued; yet it will not be contended that the statute of limitation of three years did not bar the right of the person having the superior right because the owner of the certificate by virtue of which the land was patented. In the other case, a husband, after the death of his wife, conveyed a land certificate that was community property, and patent issued to his vendee, and this was held to constitute "title" within the meaning of the statute. The Commissioner of the General Land Office had power to issue patents; the certificate by virtue of which the land in controversy was patented was a valid claim for land, and the patent issued must be deemed "title"—"a regular chain of transfer from or under the sovereignty of the soil" to the heirs of John Grigsby.

The proceedings in probate, and deed made by the administrator of John Grigsby's estate in pursuance of its order, vested in James Grigsby all the right any person as heir of John Grigsby had to the particular land in controversy; and that thus may not have been conveyed any right which the heirs of John Grigsby's second wife had, did not break the chain of transfer from the sovereignty of the soil to James Grigsby. He thus acquired the right of every person recognized by the patent to have any interest in the land; for the grant was only to persons who were the heirs of John Grigsby—made to them as his heirs; and the fact that the heirs of his second wife had an interest in the land, and in part were also his heirs, can not affect the question; for the patent ignores the right of any one to any part of the land by reason of the fact that they may be the heirs of some person other than John Grigsby. If the patent had been made to the minor children of John Grigsby by name, and in partition between them the land in controversy had been decreed to James Grigsby, his title would not have been any more "a regular chain of transfer from or under the sovereignty of the soil" than was it when partition of John Grigsby's estate was made by a court of competent jurisdiction with all his heirs before it. The patent showed that the grant was made to the heirs on account of a right theretofore existing in the ancestor; and the law would treat it, for purposes of administration and partition, looking to the patent alone, as a part of his estate, and it was properly carried into the administration; but

the patent shows that it was not intended to confer right on any person other than such as were the heirs of John Grigsby.

The case of Thompson v. Cragg, 24 Texas, 582, is relied on by appellants for the proposition that James Grigsby had not a regular chain of transfer from the sovereignty of the soil; and we will insert the statement of that case and the rulings made as given in brief of their counsel:

"The facts in the case were, that the land in controversy was granted to Prior A. Holder; it was the community property of himself and wife, and after her death he sold it, executing to the purchaser a bond for title. Holder died without having executed a deed, and after his death his vendees brought suit in the District Court of Bastrop County upon the bond for title, against his administrator and against his children, who were also the children of his said wife. They recovered a judgment which appointed a special commissioner to execute to them a deed which should convey to them "all the interest that the heirs of the said Prior A. Holder may have had in and to the lands so set apart." Such deed was executed, and they remained in possession for many years thereafter, until finally suit was brought against them by Holder's children to recover their mother's community interest in the land. The defendant pleaded the statute of limitations in all its various provisions. They also pleaded title in themselves for nineteen years, the staleness of the demand of the plaintiffs, and valuable improvements made in good faith. The jury were instructed, that upon the foregoing facts the defendants were entitled to a verdict under the three years statute of limitation, and judgment was rendered accordingly. From that judgment the appeal was taken, and because this charge was held to be erroneous the judgment was reversed, the Supreme Court saying: 'Upon a view of all the instructions given and refused by the court, it is obvious that the court below was of opinion that the decree of the District Court of Bastrop County, and the deed made in pursuance of it, only affected the rights of the children of Prior A. Holder as *his* heirs, and that they did not affect their rights as heirs of their mother Julia Holder; but the court was at the same time of opinion, that the decree and the commissioner's deed constituted such color of title as would support a possession of three years under the appropriate plea. As our opinion will lead to a reversal of the judgment of the court below, we shall proceed to state as succinctly as possible, and without any extended discussion, wherein we believe the court below to have erred, and wherein our opinion coincides with the views which it is plain were entertained by that court. In the first place, we are of opinion that the decree of the District Court of Bastrop County only concluded the rights of the children of Prior A. Holder in the half-league of land, so far as they were entitled through him, and that it did not affect the interest which they had in the land as heirs of their deceased mother Julia Holder.'"

In that case it was simply decided, that the decree bound the children of Holder in the capacity in which they were sued, and in none other.

In the course of the opinion it was said: "The object of the suit in the District Court of Bastrop County was simply to have the bond of Prior A. Holder carried into effect, and nothing more can be claimed for the decree than was asked in the suit. The minor children of Prior A. Holder were parties to the suit as the heirs of Prior A. Holder, and in that capacity only." Moreover, the decree did not purport to bind the children any further than they could be bound as heirs of their father. The opinion might be invoked, if it were necessary, to support the proposition that the patent to the heirs of Grigsby excludes an intent to grant to any persons not *his heirs*, and the fact that the land would be subject to the payment of his debts would in no way affect the question.

In Veramendi v. Hutchins, 48 Texas, 531, it was held, that the conveyance of land, granted to the husband during the marriage under circumstances that made it community property, made by him after his wife's death would not constitute "title" or "color of title" within the meaning of the statute, and the judgment was reversed because the court had charged that such a conveyance would support a plea of limitation based on three years adverse possession; but we do not see that the point involved in this case was involved or decided in that. The grant to Colonel Bowie was not hostile to the right of his wife or to those who claimed through inheritance from her; on the contrary, they claimed under it and by virtue of it, while the grant to the heirs of John Grigsby was hostile to the right of any person asserting claim as heirs of his wife.

When a patent on its face is hostile to the right of a claimant, and the several conveyances from the original grantee down to the person asserting the defense of three years limitation convey the right of the original grantee, we see no ground on which it can be held that persons so holding have not "title" within the meaning of the statute, if the chain of transfer be regular.

In Veramendi v. Hutchins it was said: "The league being community property, on the death of Mrs. Bowie her community half thereof by operation of law vested in her heirs, subject to administration and to the right of her surviving husband to wind up the community affairs. It is believed to be a doctrine thoroughly incorporated into our legal system, that the interest of the husband and wife in community property is equal, and that it is immaterial whether the grant or deed thereto be in the name of the husband or wife separately or to them jointly." No clearer statement of their respective *interests* has elsewhere been made. But we have in it a clear recognition that such a grant is in no sense hostile to the interest of the wife, and that through it she

acquires the right she has. It was further said: "It follows that the sale by Colonel Bowie to Richardson, whether by title bond or by deed, could not convey to Richardson title or color of title to his deceased wife's community interest, unless, indeed, he was empowered to sell or convey by reason of community debts or obligations. Thompson v. Cragg, 24 Texas, 596, 597. Color of title, in the meaning of the statute, differs from title only in externals and not in substance. Although the grant was in the name of Colonel Bowie, on the death of his wife no conveyance by him was essential to perfect the title of her heirs, and his unauthorized conveyance to others could not convey the title thus vested in those heirs. As to those defendants claiming under Richardson, there was the same hiatus in their claim of title as in the case of Thompson v. Cragg."

While we have no disposition in this case to enter into a discussion as to what constitutes a "legal title" as distinguished from an "equitable title," as these terms are ordinarily used, we may suggest that the word "title" as used in the above quotation with reference to the heirs of Mrs. Bowie was no doubt used in the sense of "right" or "interest," while the words "title or color of title" were used in a different sense. This quotation further recognizes, that the sole reason why Colonel Bowie could not convey "title or color of title to his deceased wife's community interest" was the want of power to convey the interest that vested in her under the grant; but it is certainly true that the heirs of John Grigsby had power to convey the entire interest which vested in them as heirs of their father by the patent, which conveyed the title to them only; notwithstanding that others by reason of the community ownership of the certificate by virtue of which the grant was made might assert an interest in the land, and notwithstanding the fact that creditors of John Grigsby might subject it to payment of their claims.

That the "title" of the original grantee, using the word "title" in the sense of right, interest, or estate, must pass by conveyances subsequent to the patent in order to constitute "title" or "color of title," is too clear for controversy; but it does not follow from this that the conveyance must pass the superior right to the land; and for this reason the conveyance made by Colonel Bowie, referred to in Veramendi v. Hutchins, did give title to one-half of the league of land, but not to the other half, simply because he had no power after the death of his wife, in the absence of circumstances conferring it, to convey the interest vested in his wife under the grant itself. But in the case before us the heirs of John Grigsby were the only persons who took title or interest by virtue of the patent to them. This they had power to convey, and the title of all vested in James Grigsby as fully under probate proceedings to which they were all parties as would it had each of them made to him a deed. If all the heirs of John Grigsby had joined

in a deed to May, which on its face purported to convey only their rights as heirs of their father to the land in controversy, would it be denied that such a conveyance with the patent would have conferred upon him title from or under the sovereignty of the soil, when the patent conveyed the land to the persons who were the heirs of John Grigsby, and it may be conceded because they were his heirs, and ignored the claim of every person who could not assert right to the land as such heir? The land was patented to the heirs, and they had power to sell all the right the patent gave them. If, on the other hand, the children of the second wife had made a deed to the land in controversy which only purported to convey such right as they inherited from their mother, would any person contend that such a deed with the patent would have conferred on the vendee either title or color of title to any part of the land from the sovereignty of the soil? Certainly not; for to connect themselves with the land, even in point of right, they could not appeal to the patent, but would be compelled to go behind it and show facts that would give them right hostile to that of the grantees designated in the patent as fully as though the land had been patented to a stranger. That the heirs of John Grigsby were in part the heirs of his second wife can not affect the question, for their rights under each parent are as separate and distinct as though they were different persons.

Counsel for appellants correctly state the law, thus: "Although the muniments of title relied on by a defendant to support the plea of three years statute of limitation may when viewed alone convey an apparent chain of title, still, when by extrinsic evidence it appears that any one of the conveyances subsequent to the patent was made by one who in fact had no power to convey what his deed purported to convey, the chain is broken; because such a conveyance does not constitute either title or color of title in the sense in which those words are used in our statute." But, it seems to us, they seek to make an application of this not admissible under the facts of this case. The cases invoked will be briefly considered.

Cox v. Bray, 28 Texas, 262, was a case in which an attorney in fact after the death of his principal conveyed land, and it was held, that such a deed could not constitute either title or color of title such as would support a plea of three years adverse possession; but this was so simply because it was not the deed of the principal, and therefore passed neither right nor title; hence there was a link wanting to connect with the sovereignty of the soil.

Hussey v. Moser, 70 Texas, 42, was a case in which, under the direction of the wife, given verbally to her daughter, the latter signed and acknowledged a paper sent to them by the husband, which was supposed to be a lease, but was a conveyance of what the evidence tended to show was homestead; and it was only in view of such being its char-

acter that the sufficiency of such a paper to constitute title or color of title was considered; for if such was not the character of the property, the husband's deed, it being community property, passed title to it. That a paper executed as was that, without any privy examination of the wife, would pass nothing in fact or form is evident.

The following cases were those in which persons were setting up limitation of three years based on deeds made by persons who before executing them had conveyed the property to others, or where there had been a prior conveyance under sale made by virtue of execution, or under other circumstances which would involve the same question: Wright v. Daily, 26 Texas, 730; Elliott v. Whitaker, 30 Texas, 412; Allen v. Root, 39 Texas, 599; Gould v. West, 32 Texas, 339; Harris v. Hardeman, 27 Texas, 249; Long v. Brenneman, 59 Texas, 213; Brownson v. Scanlan, 59 Texas, 225; Paxton v. Meyer, 67 Texas, 97; Blum v. Rogers, 71 Texas, 677. In all of these it was held, that such conveyances would not connect the vendee with the sovereignty of the soil; and this would seem necessarily to be true; for there can be but one regular chain of transfer from the sovereignty of the soil for an entire grant, though many persons may show such chain of transfer for different parts of a grant, and that chain of transfer which will reach back and connect itself with the sovereignty of the soil must consist of a grant in some form by the sovereignty, and that succession of transfers that pass whatever right the original grantee acquired. This is the *regular chain of transfer;* and a conveyance made by the original grantee or any successive owner, after he had already conveyed whatever right he had, is collateral, and can never connect a person claiming under it with the sovereignty of the soil. As said in Long v. Brenneman, "The want of title in Evans (a vendor whose title had passed from him by sale under execution) at the time he sold to appellant created a hiatus in the consecutiveness of the latter's title, and broke the chain by which he could otherwise have traced it back to the sovereignty of the soil."

Appellants' counsel, after conceding "that whether the action of the government in making its conveyance was right or wrong—whether its grantee was entitled to the conveyance or not, or whether he had notice or not of conflicting or superior claims upon the government—are matters that in nowise impair the validity of the conveyance by the government as a basis for this defense, for all that the defendant is required to do is to go back to a grant from the government that is prima facie good," under the decisions before referred to, makes the proposition, "that any conveyance subsequent to that by the government, which, although it may purport to convey the property, does not in fact do so, or which, although it may in fact pass the naked legal title, passes it to one who has notice that the real, substantial, beneficial title is in an-

other, is not so intrinsically fair and honest as to constitute a valid muniment of title under this three years statute."

The proposition that a conveyance subsequent to the grant from the sovereignty must in fact convey the property has already to some extent been noticed; but we will say further, that to so hold would make it impossible, in case a grant from the government did not convey the superior right to the land, for any person other than the immediate grantee from the government to defend under adverse possession for three years; and it would be a useless consumption of time to cite the cases which show that no such rule has ever been recognized. If by this proposition be meant that any conveyance subsequent to the grant must confer a higher right than does the grant, then it requires the stream in its downward flow to rise higher than its source, while the statute protects any person having three years peaceable adverse possession who can show a regular chain of transfer from or under the sovereignty of the soil conveying what the sovereign's grant purports to convey. The conveyances in the chain must be sufficient to do that, assuming that they are sufficient if they be executed by the proper persons, as conveyances of land are required to be, and on their faces purport to convey the land described in the original grant, and be not collateral.

If it be contended that one who has what is termed "the naked legal title" is not entitled to protection under the three years statute, if at the time the conveyance is made to him he had notice of a "real, substantial, beneficial title in another," we may reply, that the statute does not make notice of superior right in another any ground for denying to a person who has had peaceable and adverse possession of land for three years, claiming it under a regular chain of transfer from or under the sovereignty of the soil, that full protection which the statute gives; and the question of intrinsic fairness and honesty only becomes important where claim is asserted under "color of title." If, however, it could be held that the chain of transfer through which defendants claim was only "color of title," the same result would be reached.

The statute defines "color of title," as used with reference to the shortest period of limitation, to be "a consecutive chain of such transfer down to such person in possession, without being regular, as if in one or more of the memorials or muniments it be not registered, or not duly registered, or be only in writing, or *such like defect* as may not extend to or include the want of intrinsic fairness and honesty." This definition doubtless was intended to give instances in which the chain of transfer would not be regular within the meaning of the statute; but want of registration or of due registration in the chain giving color of title could have no operation in the matter of notice, and evidently was not intended to affect the right of a person holding under color of

title; for notwithstanding such irregularities may exist, the same protection is given as would be were the party holding under "title." The other illustration is where one or more of the muniments of title "be only in writing," which evidently was intended to cover cases in which the evidence of right, though in writing, was not executed in the manner prescribed by law; and under the statute these are not defects which make the muniment wanting in "intrinsic fairness and honesty." The statute, however, in effect, does declare that *like defects* in regularity will cause the claim to be only "color of title," and does not deprive them of this effect unless they be wanting in intrinsic fairness and honesty.

All the examples of irregularity given have relation to the muniment of right, and for this reason it was said in Pearson v. Burditt, that "the terms 'intrinsic fairness and honesty,' embraced in the definition of color of title in our statute, relate to the means of proving the right of property in the land, so as to make the title equitably equal to a regular chain." By "equitably equal to a regular chain," we understand to have been meant simply, that if the muniments in the chain of transfer were in fact freely executed by the persons whose acts they appear to be, then they are sufficient if upon their faces they show such right to land as a court of equity would enforce as between the parties to the instruments; and that this is what was intended is evident from the facts of the case then under consideration by this court. 26 Texas, 173.

The defendant in that case held under a conveyance from an administrator, which it was claimed was made to consummate a sale of land, belonging to an estate, fraudulently and collusively made between the administrator and the defendant, and the suit was by an administrator de bonis non to recover the land.

The question was sharply presented in the brief of counsel, thus: "The deed of Burditt does not come within the statutory definition either of title or color of title. It is not 'a regular chain of transfer from and under the sovereignty of the soil.' A chain of title of which one of the links or deeds is fraudulent can not be said to be regular. The patent passed the fee to Silsbee; the deed to Burditt, being fraudulent, transferred no *title*. Hence the distinction between the three and five years statutes; the first requires a '*title*,' the second a 'deed.' Burditt's *deed* did not connect him with the title vested in Silsbee by the patent; a fraudulent deed conveys no *title*. * * * If it did not vest the title, Burditt can not be said to hold under a 'regular chain of transfer.' It does not come within the definition of 'color of title,' because the fraud in its execution 'extends to' and 'includes' the want of 'intrinsic fairness and honesty.' Hence it does not amount to a 'title' or *color* of title under the three years statute, but may be good as a *deed* under that of five years."

Speaking of the plea of limitation based on three years adverse possession, this court said: "We think it is a good defense, notwithstanding the jury might have believed that the fraud in Burditt's deed was sufficiently proved. As a mere question of the validity of Burditt's title, it is true, as stated in the opinion above quoted, the plaintiff was in a situation to avoid Burditt's deed for fraud and have it set aside, being the administrator of Silsbee's estate. * * * It was in this point of view that the remark was made in the opinion quoted, that plaintiff could avoid Burditt's deed by showing it to be fraudulent. It was made with reference to the validity of Burditt's title, and not with reference to its capacity to support the defense of the statute of limitations of three years. * * * We do not decide this case upon any other principles than those which would govern us were Burditt's only a color of title instead of a title." If fraud in the execution of a muniment of right by an administrator, whereby the property of an estate passes by color of title to a party to that fraud, does not fix upon the instrument by which this is accomplished a want of "intrinsic fairness and honesty," it can not be held that notice of superior right in another at the time color of title is acquired can do so. The cases of Snowden v. Rush, Hussey v. Moser, Elliot v. Whitaker, nor any other case of which we have any knowledge, assert any rule to the contrary; and we are of opinion, under the facts, that all of defendants were barred by three years limitation, whether the chain of transfer under which appellees claim be "title" or only "color of title."

The statute of limitation began to run against the mother of appellant Aspley in 1854; and we do not see that it could be interrupted, as to any right she may have had, by her death in 1868, whereby a life-estate in one-third of her interest was cast upon her husband, and appellant was barred by an adverse possession of ten years when this action, to which he was made a defendant, was instituted.

Not until October 22, 1881, although made a party to this action brought in 1874, did appellant Aspley file any pleading asserting right against his codefendants; and on January 3, 1889, he called the attention of the court to the fact that the defendants in this case, and many others in the main case, had been long before duly cited to answer plaintiff's demand, which had been done, but that no answers had been filed by such defendants to his cross-bill, and he asked the court to enter a judgment by default against them in his favor, which the court refused, and a bill of exceptions was taken.

In signing the bill, the judge appends thereto the following reasons for refusing the demand: "The case was not called for trial at said time; and it further appearing to the court that after said answer had been filed, October 22, 1881, no proceedings had ever been asked thereon up to the present time; that same had never been presented or urged in any of the trials of said cause (upon severance), there having

been about six trials since 1881; that some of the defendants had answered in the original case; that some of them had suffered judgment by default and others had compromised the suit with the plaintiffs, and that the papers in the case were very voluminous; and there was no evidence that any of the other defendants had ever actually known that such answer had been filed, and if they had known of it they had the right to presume that it was not relied upon, but had been abandoned, and the cause had not been set down for trial at the time of the demand; and the court was of the opinion that the defendants should have a reasonable time after hearing of this intention to press the claim of said Aspley, to prepare and file answers, and therefore declines to enter said judgment by default."

The severance to Mrs. May had been granted before Aspley filed his cross-bill in the main case, and it may be doubted if she or any person holding under her was under obligation to take notice of the cross-bill; but if they were, we are of opinion that the court did not err in refusing to enter a judgment by default in his favor, under the circumstances. In reference to such matters the courts must have some discretion, and there was no abuse of that exercised in refusing the judgment by default.

After the trial appellant Aspley moved the court to set aside the judgment, on the ground that the special judge who tried the case was disqualified. The grounds on which the disqualification was claimed were, that a son of the special judge in 1887 purchased two lots and in the next year acquired an interest in another; but these three lots were parts of the John Grigsby league and labor. The son subsequently died, and through inheritance the special judge acquired an interest in so much of the lots as the son owned at the time of his death, and one of them which the co-heirs had conveyed since the son's death, by deed containing general warranty.

The constitution provides, that "no judge shall sit in any case wherein he may be interested, or where either of the parties may be connected with him by affinity or consanguinity, within such degree as may be prescribed by law, or where he shall have been counsel in the case." Const., art. 5, sec. 11. The statute adds nothing to this further than to fix the relationship which will disqualify at the third degree. Rev. Stats., art. 1090.

The special judge had not been counsel in this case, nor was he related in any degree to any party to this case, or even to any party to the main action, so far as the record shows; nor was he interested in the cause, for he would neither gain nor lose by its result. It does not even appear that he was interested in the questions involved in this case, for the lands in which he was shown to have at any time an interest were parts of another grant. Interest in a question to be deter-

mined does not disqualify a judge of a District Court, but is made a disqualification of a judge of the Court of Appeals or of this court. Rev. Stats., art. 1040.

There is no error in the proceedings or judgment, and the judgment will be affirmed.

*Affirmed.*

Delivered March 11, 1892.

JUSTICE HENRY not sitting.

A motion for rehearing was refused at the Austin Term.