## SABINE VALLEY TIMBER & LUMBER CO. v. CAGLE et al.†

(Court of Civil Appeals of Texas. Texarkana. June 6, 1912. On Motion for Rehearing, June 29, 1912.)

1. TRESPASS TO TRY TITLE (§ 8*)—RIGHT TO SUE.

The rights acquired by an assignee under a headright certificate, by having the land located and surveyed and the field notes returned as required by law, are sufficient to support trespass to try title.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 11; Dec. Dig. § 8.*]

2. TRESPASS TO TRY TITLE (§ 25*)—DEFENSES—STALENESS OF DEMAND.

Staleness of demand is no defense to trespass to try title.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 30, 31; Dec. Dig. § 25.*]

3. ADVERSE POSSESSION (§ 73*)—COLOR OF TITLE.

One claiming under a patent, not void for want of authority on the part of the officer to issue it, has a sufficient connection with the sovereignty of the soil to support an adverse claim of three years' duration, when accompanied by the other statutory requirements.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 435–442; Dec. Dig. § 73.*]

4. HUSBAND AND WIFE (§ 69½*)—DISABILITY OF COVERTURE—ADVERSE POSSESSION.

Under Const. 1869, art. 12, § 14, which provided that rights of minors, married women, etc., in their separate property should not be lost by adverse possession of less than seven years after removal of their respective disabilities, plaintiff's right in land is not affected by adverse possession of one who died before removal of plaintiff's disability of coverture, during which disability the adverse possession was held.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 294, 300; Dec. Dig. § 69½.*]

5. LIMITATION OF ACTIONS (§ 195*)—DISABILITIES—BURDEN OF PROOF.

Where defendant shows adverse possession of land, covering a time sufficient to constitute a statutory bar, the burden falls on plaintiff to show disability of coverture or minority defeating the defense of limitations.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 711–716; Dec. Dig. § 195.*]

### On Motion for Rehearing.

6. ADVERSE POSSESSION (§ 73*)—COLOR OF TITLE.

A patent to S.'s heirs, vested sufficient title in them to sustain a plea of three years' limitations, though he had previously assigned the certificate under which the patent was

granted; no warranty of title appearing to have accompanied the assignment.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 435–442; Dec. Dig. § 73.*]

Appeal from District Court, Shelby County; W. C. Buford, Judge.

Motion by Mrs. L. A. Cagle and others against the Sabine Valley Timber & Lumber Company. Judgment for plaintiffs, and defendant appeals. Reversed and remanded.

Jno. T. Garrison and Baker, Botts, Parker & Garwood, all of Houston, Davis & Davis, of San Augustine, and Greer, Nall & Bowers, of Beaumont, for appellant; Oliver J. Todd, of Beaumont, and J. M. Sanders, of Center, for appellees.

HODGES, J. The appellees, Mrs. L. A. Cagle, George Medlin, and Alice Truelove, joined by her husband, George Truelove, were the plaintiffs in the court below, and in this suit seek to recover the Archibald Smith survey, located in Shelby county, from the Sabine Valley Timber & Lumber Company, W. R. Pickering Lumber Company, E. B. Parker, F. T. Lynch, and Mrs. M. L. Lynch. The Sabine Valley Timber & Lumber Company and E. B. Parker disclaimed title to all of the land sued for, except a portion, which was fully described in their answer, consisting of about 1,600 or 1,700 acres. As to this, they pleaded not guilty, the three, five, and ten years statutes of limitation, also laches and stale demand. The answers filed by the other defendants are not material, as no issue is presented as to them on this appeal. The plaintiffs filed a supplemental petition, in which they pleaded the minority of Mrs. L. A. Cagle before the year 1874, and her coverture after that time. They also alleged that Susan Medlin, the mother of the plaintiffs George Medlin and Alice Truelove, was, at all times prior to 1866, under the disability of minority, and after that time and until 1874 was under the disability of coverture. The case was submitted to the court, without a jury, and a judgment rendered in favor of the plaintiffs against the defendants for all the land sued for, except that portion which was awarded to the W. R. Pickering Lumber Company. The Sabine Valley Timber & Lumber Company alone has appealed.

The appellees claim the property as the heirs of Mark Hailey, assignee of Archibald Smith, the owner of the original certificate by virtue of which the land was located. The following instruments are the evidences of title upon which they rely: "Republic of Texas, County of Shelby. We, the board of land commissioners, do certify that Mark Hailey, assignee of Archibald Smith, appeared and made the necessary proof of the citizenship of the said Smith, and do hereby authorize any lawful surveyor to survey for the said Smith the league and labor of land which the said Hailey will designate to you, he being an immigrant of the year 1826. Done in Shelbyville on the 4th of February, 1838. George English. W. H. Landrum. George Butler. Teste: Lilburn W. Evans, Clerk."

There is written across this certificate the following: "Certificate for the unlocated balance issued for 2,065,000 square varas of land, September 28th, 1849. S. Crosby, Commissioner." There is attached to said certificate the following: "San Augustine, August 18, 1835. Sir: You are authorized to survey within the limits described by me in your instructions sitio and labor of land which Mr. Archibald Smith will designate to you, providing such tract is entirely vacant, strictly observing in every particular the instructions given you. [Signed] Geo. W. Smith, Commissioner." There is further indorsed on this certificate the following: "File 333, Shelby First-Class Headright Certificate, Archibald Smith, one league one labor. A. Smith, Apt. Mark Hailey, Assignee."

On the 17th of November, 1841, there was surveyed by the county surveyor of Shelby 23,935,000 square varas of land, which is the land sued for in this case, and the following recitations occur in the beginning of the record made by the surveyor, viz.: "Mark Hailey survey made for Mark Hailey, assignee of Archibald Smith, 23,935,000 square varas, situated in Shelby county, Texas, ten miles east by south from Shelbyville, by virtue of certificate No. 284, issued by the board of land commissioners of Shelby county, Texas, for one league and one labor of land, dated the 24th of February, 1838." And then follows the field notes of the land as set out in plaintiff's petition. There is indorsed on this survey the following: "File 333, Shelby First-Class Field Notes, Archibald Smith, 23,100,000 labors, patented May 5, 1849." This is signed, "Elgin."

The following certificates, made by the county surveyor, Hooper, also appear on said survey: "I, Richard Hooper, county surveyor for Shelby county, do declare under oath of my office that this within survey was made since the 1st day of February, 1838, and that the bounds, both natural and artificial, are all described in these field notes and the survey was made according to law. 2nd December, 1842. Richard Hooper, County Surveyor for Shelby County, Texas." There was further this indorsement on said survey: "Mark Hailey, 23,935,000 square varas, land surveyed by Richard Hooper," and the following certificate also appeared on said survey: "I, Richard Hooper, county surveyor for Shelby county, do hereby declare upon oath of my office that the within survey was made since the 1st of February, 1838, and that the bounds, both natural and

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

artificial, are all described in these field notes, and that the same was made as the law directs. Given under my hand this the 30th of January, 1840. Richard Hooper, Surveyor, Shelby County, Texas." The following also appears to have been made by said county surveyor on said field notes: "Recorded in Book A, 349 and 50. This land was composed and chained in 1835. The government dues all paid, but for many errors has been resurveyed and rectified, and old papers here sealed to new field notes. This the 2nd day of December, 1842. Richard Hooper, County Surveyor."

The following receipt was introduced, showing that $42 in full payment of the fees for the government on the field notes above described was received of Mark Hailey by G. Volk, receiver: "Shelbyville, 16th April, 1839. Then received of Mark Hailey forty-two dollars, in full of the fees for the government on these field notes within. G. Volk, Receiver."

The plaintiffs introduced a certified copy from the General Land Office of Texas for certificate No. 1220/1319, for unlocated balance of certificate 284; the same being as follows: "1220/1319. This is to certify that Mark Hailey, assignee of Archibald Smith, is entitled to have surveyed by any legally authorized surveyor, upon any of the vacant and unappropriated public domain of the state of Texas, 2,065,000 square varas of land, it being the unlocated balance of headright certificate No. 284, issued by the board of land commissioners of Shelby county, to the said Archibald Smith for one league and one labor of land, dated the 24th day of February, 1838. In testimony whereof, I hereunto set my hand and affix the seal of said office the day and date first above written. S. Crosby, Chief Clerk. [Seal.] Mark Hailey, assignee of interlined by me in accordance with original certificate. Elgin. Richard Hooper."

The following indorsement appears on said certificate: "File 402, Fannin First-Class, 2,065,000, Duplicate Certificate, Archibald Smith. Archibald Smith Duplicate for 365½ acres of land."

The plaintiff next introduced a certified copy of a patent from the General Land Office, patent No. 748, said patent bearing date the 2d day of October, 1858, wherein there is patented to Mark Hailey, as assignee of Archibald Smith, the 365½ acres of land, by virtue of said duplicate, unlocated balance certificate, above copied in this opinion; said lands being located in Cook county, Tex.

The appellant claims under a patent from the state, issued May 5, 1849, to the heirs of Archibald Smith. It is agreed by the parties that Smith died in 1839, leaving two sons and a widow. The testimony is sufficient to show that appellant holds under a regular chain of transfers from the heirs of Smith.

[1, 2] The only assignments of error presented on this appeal are those which assail the judgment as being unsupported by the evidence. The first proposition urged is that the appellees, having only an equity in the land, lost their rights by their laches and the lapse of time, and are now asserting a stale demand. If Mark Hailey acquired the Smith certificate and had the land located and surveyed and the field notes returned to the land office, as required by law, he became the owner of the land and entitled to a patent from the state. His rights thereby acquired were sufficient to support the statutory action of trespass to try title, against which the plea of stale demand is no defense. Duren v. H. & T. C. Ry. Co., 86 Tex. 291, 24 S. W. 258; League v. Henecke, 28 S. W. 220; Creswell Ranch Co. v. Waldstein, 28 S. W. 262; N. Y. L. & T. Co. v. Hyland, 8 Tex. Civ. App. 601, 28 S. W. 206; Early v. Compton, 149 S. W. 694, recently decided by this court.

[3] It is urged, in the second place, that the judgment should have been for the appellant upon its defense of three years' adverse occupancy under title and color of title. This contention is predicated upon the testimony which shows that John R. Choate, under whom the appellant claims, did occupy and claim the premises under deeds from the orignal patentees. Without reproducing the testimony, we think it may be said from the record that the evidence established with reasonable certainty that Choate had acquired the title of the heirs of Archibald Smith and was in the actual possession of the land for more than three years prior to his death, which occurred in the latter part of 1874 or the first of 1875; and, unless his connection with the sovereignty of the soil is broken, or it is shown that appellees were at the time under some legal disability which would protect them from the operation of the statute, this defense must be held sufficient. Under the rule announced in League v. Rogan, 59 Tex. 430, it seems to be established in this state that one claiming under a patent, not void for want of authority on the part of the officer to issue it, has a sufficient connection with the sovereignty of the soil to support an adverse claim of three years' duration, when accompanied by the other statutory requirements.

[4, 5] We will now proceed to examine the evidence relating to the disability of coverture and minority relied on to defeat the bar of limitation. Mrs. Cagle testified that her father, Mark Hailey, died in 1854, and that her mother died in 1896. Her parents had several children, all of whom were dead except herself; and all but one other, Susan, who afterwards married Medlin, died un-

married. Mrs. Cagle was born in 1851 and was married in 1870; but the exact date of her marriage is not given. All statutes of limitation in this state were suspended during the Civil War and thereafter till March 30, 1870, at which time the Constitution of 1869 was ratified by Congress. It is conceded that the only adverse occupancy available in this case is that of John R. Choate from March 30, 1870, to his death in 1874 or 1875. If Mrs. Cagle married prior to March 30, 1870, she was under the disability of coverture at the time the statute of limitation was revived, and continued so till the death of Choate, and is not therefore affected by his adverse occupancy. If she was then a minor, and married after March 30, 1870, her marriage would have the effect of putting the statute into operation; for she would not be permitted to tack her coverture to her minority. But section 14 of article 12 of the Constitution of 1869 has this provision: "The rights of married women to their separate property, real and personal, and the increase of the same, shall be protected by law; and married women, infants and insane persons shall not be barred of their rights of property by adverse possession or law of limitation of less than seven years from and after the removal of each and all of their respective legal disabilities." From this it appears that both minors and married women were allowed seven years after their disabilities ceased in which to assert their rights with respect to their property. Hence we conclude that as to Mrs. Cagle the defense of limitation was not available, and the court committed no error in so holding. But this cannot be said of the appellees Modlin and Truelove. We gather from the record that these parties are the children of Susan Hailey. The evidence shows that Susan was born in 1843; that she was married, and died in 1879. There is no evidence as to when she married, and whether or not she was married during the period from 1870 to 1874. The appellant having shown adverse occupancy covering that time, sufficient to constitute the statutory bar, it devolved upon the appellees to establish the disability upon which they relied to defeat that defense. This has not been done by Medlin and Truelove, and the judgment as to them is erroneous. It also appears from the record that Hailey acquired the certificate after he and his wife were married. But no question as to the community rights of Mrs. Hailey is raised in briefs of counsel.

For the error indicated above, the judgment must be reversed. Under the record as now presented, manifestly Mrs. Cagle is entitled to recover some of the land sued for, but how much we are unable to say. That fact will necessitate a remand of the case. The judgment will therefore be reversed, and the case remanded for another trial.

### On Motion for Rehearing.

In reversing the judgment in this case, we concluded that the evidence established the fact that John R. Choate, under whom the appellant claims, had occupied the land in controversy for more than three years prior to his death, claiming under deeds emanating from a patent issued by the state to the heirs of Archibald Smith. We still adhere to that conclusion. We also concluded that it had not been shown that Susan Hailey, the mother of two of the appellees, was under disability during that time, and for that reason her heirs were barred. The proof showed that Susan Hailey attained her majority in 1864. Coverture alone would exempt her from the operation of the statute of limitations after its revival in 1870. The evidence does not inform us whether or not she was a married woman from that time till Choate's death in 1874. It is shown that she married some time during her life; but the evidence fails to disclose the date of her marriage or the period of her coverture. We therefore see no reason for changing our conclusions as to that issue.

[6] It is urgently insisted, however, that we are in error in holding that the three years' statute of limitation is applicable under the facts of this case. It is argued that the appellant failed to connect itself with the sovereignty of the soil; that the legal effect of the patent issued in 1849 to "the heirs of Archibald Smith" was to vest the legal title to the Smith survey in the heirs of Mark Hailey by reason of the previous assignment of the certificate under which the land was granted. The principle invoked is that enunciated and adopted in a number of decisions rendered by the Supreme Court of this state, among which may be found the following: Baldwin v. Root, 90 Tex. 547, 40 S. W. 3; Gould v. West, 32 Tex. 339; Satterwhite v. Rosser, 61 Tex. 166. While in the original opinion there was no reference to any of the above cases, and no attempt was made to distinguish them from the facts here under consideration, they were neither overlooked nor disregarded. We thought then, as we think now, that the rule there announced is inapplicable to the facts here involved. If we are mistaken in this view, then the contention of appellees is correct, and the judgment in this case should not have been reversed.

In Baldwin v. Root, supra, a land certificate for an unlocated balance had been issued to the heirs of Jonas Harrison. Prior to the location of this balance, those heirs transferred an interest in the certificate to Turner. After the location, a patent for the entire tract was issued to "the heirs of Jonas Harrison." The Supreme Court held that to the extent of the interest previously

assigned to Turner the issuance of the patent to those heirs vested in the holders of that interest the legal title, applying the rule stated in Barroum v. Culmell, 90 Tex. 93, 37 S. W. 313. In that case the court said: "In this class of cases the patent, when issued, inures to the benefit of the assignee. He acquires the legal title by estoppel."

It will be observed that in all of the cases before referred to the patents had been issued to the parties who had themselves previously sold the certificates, and that the sales of the certificates had been accompanied by express or implied warranties from the grantors. Here we have a case where the evidence of the assignment of the certificate rests upon circumstances alone, with nothing to indicate whether it was by parol or in writing, or that any character of warranty accompanied the transfer. It is also an instance where the assignment is made by a party different from the named grantees in the patent. There being no evidence of any express warranty attending this transfer of the certificate, or such as would be implied in a written conveyance made in accordance with our statute, it is doubtful whether an estoppel could be invoked against Smith, or his heirs, had the patent been issued to him during his lifetime, and the contest one in which the heirs were undertaking to recover an inherited title. Howard v. Stubblefield, 79 Tex. 1, 14 S. W. 1044. But, resolving that doubt in favor of the estoppel, does it follow that the same legal effect should be given to a patent issued after his death to his heirs at law? To be more explicit, are those heirs now estopped to assert title to this land merely because their ancestor, during his lifetime, sold the certificate by virtue of which the land was located? The general rule is that estoppels bind parties and their privies. Applying that rule, it may be said that Smith's heirs would be estopped to assert a title to this land which is derived from their ancestor, and must be traced through him to the state. That situation would make them privies of Smith. The estoppel attaches to the title taken as a heritage. But it does not necessarily follow that the heirs would be estopped to set up a title to the land acquired from another and different source—one which does not descend to them from Smith. For, in asserting that kind of a claim, they would not depend upon any succession from the ancestor, Smith. It is the presence of the covenant of warranty, either expressed or implied, in a conveyance which imparts to the instrument its continuous effect and operates to instantly transfer an after-acquired title from the grantor to the grantee. An heir is not personally bound by the covenants of his ancestor; nor is he personally liable for the damages which may result from their breach. A creditor holding such a claim merely has the right to resort to property descended from the estate of the ancestor while in the hands of the heir for the satisfaction of his debt. Blinn v. McDonald, 92 Tex. 604, 46 S. W. 787, 48 S. W. 571, 50 S. W. 931. The heir is not estopped to set up against the grantee of his ancestor a prior title, unless it be shown that a consideration had been paid by such grantee, and that the heir has received property from his ancestor equal to that consideration. Chace v. Gregg, 88 Tex. 552, 32 S. W. 520; Foote v. Clark, 102 Mo. 394, 14 S. W. 981, 11 L. R. A. 861; 16 Cyc. 718, and notes. When Archibald Smith transferred his certificate to Hailey, he parted with all the interest he had in that instrument and the land to be thereafter located by its authority. As to this property, nothing remained to pass by descent upon his death to his heirs. There is no evidence that Smith left any other property to be inherited by them. Hence, in asserting title under the patent, they would be claiming by purchase direct from the state, and not by descent from their ancestor. There can be no inheritance where there is no heritage. It is true they were designated as "the heirs of Archibald Smith," but that language was descriptive of the persons to whom the conveyance was made, and not of the estate conveyed. They were words of purchase and not of limitation, and had the effect of vesting whatever was conveyed in those individuals who at that time were the heirs at law of Archibald Smith. Grigsby v. May, 84 Tex. 254, 19 S. W. 343. It is immaterial that this conveyance from the state vested no beneficial interest in the grantees. "The officer who issued the patent, having the power to issue it, it is title, and the fact that there may have been a superior equity cannot make it 'less.'" League v. Rogan, 59 Tex. 427. Such a title loses none of its potency as a basis for an acquisition of the property by adverse possession, except in the hands of those whom the law estops to assert it. It therefore logically follows that if the heirs of Archibald Smith are not subject to the estoppel invoked the chain of title is complete.

It is also insisted by appellees, in the motion for rehearing, that John R. Choate did not acquire title from all of the heirs of Archibald Smith, and for that reason did not perfect a title by limitation to the entire interest. That may be true, and if so it only affects the extent of the interest recoverable by the heirs of Susan Hailey. The extent of their loss will, of course, be determined by the connection which Choate had with the heirs of Smith at the time of his adverse occupancy. That is a matter which may be ascertained and adjusted upon another trial.

The motion is overruled.