George W. CRAFT, Appellant,

v.

Horace William NETHERTON, Jr., Appellee.

No. 10303.

Court of Civil Appeals of Texas.

Austin.

March 16, 1955.

Rehearing Denied March 30, 1955.

Arthur Mitchell, Austin; for appellant.

Tom H. Davis, Austin, for appellee.

HUGHES, Justice.

This suit is for the recovery of commissions for effecting the sale of real estate.

Appellee, Horace William Netherton, Jr., sued as assignee of John Youngquist. The defendant and owner of the property sold was appellant George W. Craft.

The listing contract was on a form designated as "Multiple Listing Service of the Austin Real Estate Board" and contained this provision:

"I understand that Agent is a member of the Multiple Listing Service of the Austin Real Estate Board and that this listing will be filed with said Service within 48 hours after I sign the same. I agree that members of said Service may act in association with Agent in procuring or attempting to procure a purchaser. In the event a sale or exchange shall be made or a purchaser procured by a member of the Multiple Listing Service other than Agent, the terms of this agreement shall apply to such transaction."

The listing contract was procured by appellee and executed by himself and appellant. The agent actually effecting the sale was John Youngquist, a member of the Multiple Listing Service of the Austin Real Estate Board. His claim for a commission was assigned to appellee.

The case was tried to a jury and upon its verdict judgment was rendered for appellee for the commission sued for less a stipulated credit of $3.43 and for $150 attorney's fees.

The jury found that Youngquist was the procuring cause of the sale of appellant's property which had been listed for sale and that $150 was a reasonable fee for appellee's attorneys.

Among defensive findings by the jury were these:

That prior to execution of the listing contract appellee told appellant that such contract was for "a period of 60 days only" and that this representation was not false; that appellant believed just prior to executing the listing contract that it was for sixty days only.

The listing agreement was executed November 5, 1953, and the sale of appellant's property was consummated January 25, 1954.

It is appellant's position, as reflected by his first two points, that there was no meeting of the minds between the parties as to the period of time for which the listing should run and hence no enforcible contract was made. He arrives at this conclusion by taking the fact finding of the jury that appellee represented and appellant believed that the listing was for sixty days only and comparing this with the provisions of the contract itself which show that the listing was to be exclusive for sixty days and "thereafter for the same number of days unless cancelled in writing by," appellant.

█ We are unable to agree with appellant that this is the only effect which can be given the jury findings and the contract. Mr. Netherton testified: ·

"Q. But the agreement says further, 'For a period of sixty days from this date, and thereafter for the same number of days unless cancelled in writing by me or us, at the price of $9,450.00, and within the authority herein granted,'—now, let me ask you, Mr. Netherton, in discussing the time of listing did you and Mr. Craft have a discussion of the sixty days period? A. He asked me how long we wanted it for listing and I said, 'Sixty or ninety days.' He said, 'Let's put sixty days in there,' and I said, 'All right'; and I wrote in 'sixty days.'

\*    \*    \*    \*    \*    \*

"Q. Was there any discussion or any reference to the clause, 'And thereafter for the same number of days unless cancelled in writing by me or us'? A. I always make a point of mentioning whenever I sign an exclusive listing that all you have to do to cancel your listing is to make a short note in writing to either the listing broker—in this case it was myself—or to the Executive Secretary of the Austin Real Estate Board.

"Q. Your testimony is that you stated that at that time to Mr. Craft? A. Yes; that's right.

"Q. Your testimony is, if I understand you, that you called to Mr. Craft's attention on November 5, 1953 that the listing would not end at sixty days, but would continue; is that what your testimony is? A. No; he asked me how long it would be, and I said 'sixty days'; that that was all he was tied up for—sixty days; and all he had to do to cancel it at the end of sixty days was to drop a note to my office or to the Secretary of the Austin Real Estate Board.

"Q. Then he was tied up for longer than that sixty days? A. He was tied up for only sixty days. All he had to do to cancel it at the end of that sixty days was to send that note to either myself or to the office of the Executive Secretary of the Austin Real Estate Board."

The evidence also shows that appellant received and retained a copy of the listing contract and did not complain that it did not correctly reflect his understanding of the agreement. Confirming appellant's knowledge of the second sixty-day period is evidence that he permitted appellee's sign to remain in his yard after the expiration of the first sixty days and also permitted Mr. Youngquist to show the property to the purchasers during such second period.

In view of this evidence it is our opinion that the findings of the jury are consistent and are insufficient to establish any fraud on the part of appellee or any lack of mutual assent to the terms of the contract. If appellant had desired submission of issues regarding the extension agreement he should have requested them.

Appellant's points three and four are based upon fraudulent misrepresentation on the part of appellee, a matter which we · have discussed and disposed of in overruling his first two points and for the same reasons the present points are likewise overruled.

By his fifth point appellant contends that since the sale was effected by Mr. Youngquist and not by appellee that there can be no recovery since he had no contractual relations with Youngquist.

Mr. Youngquist was a licensed real estate dealer and a member of the Multiple Listing Service of the Austin Real Estate Board. The listing contract was unilateral as to Mr. Youngquist and he was not obligated to do anything under it but when he accepted the contract and performed the duties contemplated therein a binding contract was created and appellant's liability attached. Patton v. Wilson, Tex.Civ.App., San Antonio, 220 S.W.2d 184, writ ref., n. r. e.

The sixth point relates to the allowance of attorney's fees appellant contending that they are not recoverable in this type of suit. Art. 2226, Vernon's Ann. Civ.St. provides, in part, that attorney's fees are recoverable in suits "for personal services rendered." The services of a real estate broker are certainly personal services and the other requirements of the statute having been fulfilled attorneys' fees were properly allowed. Lawson v. Holloman, Tex.Civ.App., San Antonio, 238 S.W. 2d 284, writ ref., n. r. e.

The last point is that appellant should not be taxed with the cost of taking his pretrial deposition.

The losing party is ordinarily adjudged to pay all costs, Rule 131, Texas Rules of Civil Procedure. The court, however, may, for good cause, otherwise adjudge costs. Rule 141, T.R.C.P.

We find no abuse of discretion in adjudging costs of taking appellant's deposition against appellant even though appellant resided in the county of trial. In many cases it would be most imprudent not to have one's adversary committed under oath before trial. We think it was proper practice in this case.

The judgment of the trial court is affirmed.

Affirmed.