TEXAS RESERVE LIFE INSURANCE CO.,
Appellant,

v.

SECURITY TITLE COMPANY et al.,
Appellees.

No. 13833.

Court of Civil Appeals of Texas.

San Antonio.

Nov. 15, 1961.

Rehearing Denied Dec. 12, 1961.

Morriss, Morriss, Boatwright & Lewis,. San Antonio, for appellant.

W. Pat Camp, Wm. C. Church, House,. Mercer, House & Brock, San Antonio, for appellees.

BARROW, Justice.

This is an appeal from a judgment rendered in a consolidated action. The first suit is by Texas Reserve Life Insurance Company against Security Title Company and Norman M. Lowery, to recover $40,-000.00 damages, and the sum of $24,000.00· deposited with Security Title Company in connection with a contract growing out of a real estate exchange contract between Texas Reserve Life Insurance Company· and Norman M. Lowery. The second suit is by Arthur McKenzie, d/b/a Requa Realty Company, against Texas Reserve Life Insurance Company and Security Title Company, to recover a real estate commission in the sum of $18,650.00, growing out of the real estate exchange contract above mentioned. The consolidated causes were tried to a jury which rendered a verdict upon special issues. Texas Reserve Life Insurance Company thereafter moved for judgment against Lowery and Security Title Company upon the jury verdict. The court granted the motion as against Lowery, but denied it as against Security Title Company, and rendered judgment non obstante veredicto in favor of the Title Company. The court rendered judgment upon the jury verdict against Texas Reserve Life Insurance Company in favor of McKenzie for his commission, together with interest, and $1,000.00 attorney's fees. Norman M. Lowery did not appeal, and that part of the judgment is final. Texas Reserve Life Insurance Company has appealed from the judgment against it in favor of Security Title Company and Arthur McKenzie. Texas Reserve Life Insurance Company will hereinafter be referred to as appellant, Security Title Company, as Title Company, and Arthur McKenzie, as McKenzie.

The factual background of this appeal is as follows:

On and prior to May 27, 1959, appellant was the owner of the property at 115 Broadway in San Antonio, Texas (hereinafter styled Broadway property), and Norman M. Lowery was the owner of certain property located on San Pedro Avenue in San Antonio, Texas (hereinafter styled San Pedro property), and on that date appellant and Lowery entered into an exchange contract, whereby they agreed to convey to each other their respective properties at agreed values. The value of the San Pedro property was agreed at $123,000.00, and the Broadway property at $373,000.00. The difference in value was to be evidenced by a vendor's lien note secured by the Broadway property in favor of appellant in the sum of $250,000.00. Appellant agreed to pay McKenzie a real estate commission of $18,650.00, which, under the exchange contract signed by McKenzie as agent, was to be deposited with Security Title Company, and paid by that Title Company to Mr. McKenzie when the transaction was closed.

The exchange contract provided that both pieces of property were free and clear of indebtedness and were to be conveyed free and clear of indebtedness, except that appellant was to own the $250,000.00 vendor's lien note on the Broadway property.

The exchange contract was delivered to Security Title Company for the purpose of examining the title to each piece of property, and to issue its title guaranty upon each piece of property in favor of the respective grantees. Security Title Company began its title search and ascertained that the Broadway property was free and clear of indebtedness. It prepared the deed to be executed by appellant in favor of Lowery, and the note and deed of trust to be signed by Lowery in favor of appellant, being the ordinary sale with reservation of vendor's lien, but upon examination of the San Pedro property, the Title Company learned that such property was encumbered by a $40,000.00 deed of trust mortgage. Where-

upon, Title Company inquired of Mr. Lowery as to the fact of such mortgage existing, and Mr. Lowery advised the Title Company that such mortgage had been paid, and that he had a release which he would bring to the Title Company. The Security Title Company, with full notice of such outstanding $40,000.00 mortgage indebtedness on the Lowery property, caused the deeds to be signed by both appellant and Lowery, and the note and deed of trust by Lowery, and then caused the two deeds and the deed of trust to be filed for record in the appropriate records of the County Clerk's office of Bexar County, Texas. It developed, in truth and in fact, that Mr. Lowery had not paid the $40,000.00 mortgage and did not have a release, and that such $40,000.00 note became due and payable on November 6, 1959, at which time the holder of such $40,000.00 mortgage (Mr. T. J. Goad) caused the trustee in his deed of trust to post trustee's notices of sale to foreclose his deed of trust lien on the San Pedro property, and appellant, in order to protect its title to the San Pedro property and not to lose the property by foreclosure to Mr. Goad, paid to Mr. Goad the sum of $44,163.01, constituting principal, interest, and attorney's fees.

On June 11, 1959, appellant paid to Security Title Company the sum of $24,980.53, which amount represented the $18,650.00 commission in favor of McKenzie, plus tax prorations and closing expenses.

About the same time appellant and Lowery entered into an agreement that appellant was to lease from Lowery the Broadway property for a rental of $2,750.00 per month, said lease to be for a term of two years, and appellant had an option to continue the lease for an additional three years. That contract was also reduced to writing and duly executed by the parties.

After the two deeds were recorded, the deed to the San Pedro property, from Lowery to appellant, was mailed and delivered to appellant. However, the deed from appellant to Lowery, covering the Broadway

property, was returned to the Title Company and was retained by it. Appellant did not know, at the time it received the deed that there was a lien against the San Pedro property, but within a few days thereafter appellant had full knowledge thereof. After appellant had such knowledge, it refused to agree to a reconveyance of the properties or cancellation of the deeds, but, on the contrary, elected to treat the recorded deeds as a complete conveyance of the respective properties, and at the same time called upon the Title Company to pay off the Goad lien on the San Pedro property. In that connection, appellant called upon the Title Company to deliver to it the Lowery $250,000.00 note, and thereafter appellant treated itself as the tenant of Lowery and credited him with each monthly payment on the note in the sum of $1,461.50, and retained the balance of rent due to Lowery. The record shows that, according to appellant's accounting, Lowery is entitled to credit for the difference between the amount of rent due him in the sum of $2,750.00 per month, and the monthly payment on the note, making a total credit due Lowery of the sum of $19,327.00, less charges for insurance, taxes and supplies paid by appellant under the rent contract. The judgment in this cause shows that the amount due from Lowery to appellant by reason of appellant's payment of the Goad lien, which appellant paid off in November following the exchange, was by these payments reduced to $30,225.57, and that appellant was awarded judgment against Lowery establishing and foreclosing a lien against the Broadway property on account of appellant's payment of the Goad note.

Appellant's main contention is that the Title Company having negligently caused the deeds to be recorded without the Goad lien having been released, became liable to appellant in damages for the amount it was required to pay in order to secure title to the San Pedro property free and clear of liens. We do not agree. As between appellant and the Title Company the facts are not in dispute. Undoubtedly, the Title Company was negligent in recording the deeds before a release of the lien was received, and was liable to appellant for such damages as appellant suffered by reason thereof, had appellant elected to pursue such remedy.

The rule of law controlling in this case is stated in 48 A.L.R. 405, as follows:

"It may be stated as a general rule, that where an instrument placed in escrow is delivered by the escrow holder in violation of, or without compliance with, the terms or conditions of the escrow agreement, no title or rights pass by virtue of the second delivery, for the reason that in legal contemplation there has been no effectual delivery."

And on page 424, it is further stated that

"Generally, although an unauthorized second delivery of an escrow is ineffectual, an express ratification by the grantor or maker will render it a good delivery, at least from the date of ratification. Coe v. Turner (1823) 5 Conn. 86; Mays v. Shields (1903) 117 Ga. 814, 45 S.E. 68; Eichlor v. Holroyd (1885) 15 Ill.App. 657. Thus in the case last cited, wherein it appeared that the grantee by some means had obtained a deed delivered in escrow without performing the condition on which his right to receive it depended, the court said: 'The appellee had his election either to repudiate the action of appellant and reinvest himself with the record title to the land, in which event he could have recovered the necessary expense from appellant, or to affirm the act of his agent and recover the purchase money from the grantee by action, or enforce a vendor's lien upon the land.'"

The rule is also stated in 19 Am.Jur. 439, Escrow, § 21. These rules have been followed in Texas. Davis v. Lyons, Tex.Civ.

App., 274 S.W. 288; Blue v. Conner, Tex. Civ.App., 219 S.W. 533; Dowdy v. Furtner, Tex.Civ.App., 198 S.W. 647; Sheldon v. Stagg, Tex.Civ.App., 169 S.W. 550; Spotts v. Whitaker, Tex.Civ.App., 157 S.W. 422. Thus, it is clear that when appellant discovered that the deed had been recorded without the release of the lien against the San Pedro property, it was put to an election either to repudiate the act of the Title Company in recording the deed, in which event it could have recovered from the Title Company the necessary expense of clearing the record of any cloud upon its title to the Broadway property, or to accept the deed and recover from Lowery, under the contract, the amount necessary to pay off and secure a release of the lien against the property it received from Lowery, but appellant could not pursue both remedies. The remedies are inconsistent. Mosher Mfg. Co. v. Eastland, W. F. & G. R. Co., Tex.Civ.App., 259 S.W. 253; 15–B Tex. Jur. 329, Election of Remedies, § 2. Under the undisputed facts established in this case, appellant made the election to accept its deed to the San Pedro property, thus encumbered, and proceed against Lowery to make good on his contract. By so doing it elected to ratify the act of the Title Company in recording the deeds and waived any right it had to recover damages against the Title Company. Moreover, we are of the opinion that even if appellant had elected to repudiate the act of the Title Company in recording the deeds, it would not have been liable to appellant for the amount of the Goad lien. The Title Company did not become a guarantor or insurer of the title. Its duty was only to exercise due care to carry out the terms of the escrow agreement, and its full liability was to bear the expense of restoring the status quo.

■■ Appellant further contends that the Title Company did not plead either ratification or waiver, and that it cannot rely thereon. We overrule that contention. The evidence establishing ratification and waiver was introduced without objection or limitation. And particularly appellant made no objection thereto on the ground of lack of pleading, therefore, appellant waived such lack of pleading, and the issues were tried by consent. Rule 90, Texas Rules of Civil Procedure. The evidence establishing ratification and waiver was undisputed, therefore, no issues were required to be submitted to the jury, and the provisions of Rule 279, T.R.C.P., are inapplicable. The trial court correctly granted judgment non obstante veredicto in favor of Security Title Company.

■■ In the suit by Arthur McKenzie against appellant, it is contended by appellant that the court erred in rendering judgment in favor of McKenzie for interest on the $18,500.00 due to McKenzie, as well as attorney's fees. Appellant admits that McKenzie is entitled to the commission on the real estate exchange, but says that it deposited the money with the Title Company and McKenzie had no cause of action against appellant and is therefore not entitled to interest and attorney's fees. We overrule that contention. It is undisputed that appellant, shortly after the controversy arose between the appellant and the Title Company, demanded the return of the money it had deposited, including the $18,-500.00 commission due to McKenzie, and that appellant sued the Title Company therefor. Thus appellant's action prevented the payment of the money to McKenzie. As a consequence thereof, McKenzie was forced to file suit to recover the same. After the two suits were filed the Title Company paid the funds into the registry of the court. Undoubtedly, McKenzie is entitled to interest at the legal rate during the period payment was delayed by appellant's demand and suit. Settegast v. Timmins, Tex.Civ.App., 6 S.W.2d 425. Appellant contends that attorney's fees are not recoverable in this case under the statute. Article 2226, Vernon's Tex.Civ.Stats., expressly provides:

"Any person having a valid claim against a person or corporation for personal services rendered, * * *

and if, * * * he should finally obtain judgment * * *, he may also recover, in addition to his claim and costs, a reasonable amount as attorney's fees, if represented by an attorney."

It has been repeatedly held by the courts of this State that the services of a real estate broker in effecting a sale of real estate are personal services within the meaning of Article 2226, supra, and in suits by such brokers for commission on such sales, attorney's fees are properly allowed. Bradshaw v. Marcum, Tex.Civ.App., 321 S.W.2d 352; Reinke v. West, Tex. Civ.App., 303 S.W.2d 419; Craft v. Netherton, Tex.Civ.App., 276 S.W.2d 855. There is no question about McKenzie's making timely demands for payment prior to the filing of suit for such commission. The jury found the amount of a reasonable fee in the case. The trial court properly allowed interest from the date the commission should have been paid, and attorney's fees as found by the jury.

The judgment of the trial court is in all things affirmed.