Darrell COOPER, Appellant,

v.

Edward L. WILDMAN et ux., Appellees.

No. 984.

Court of Civil Appeals of Texas, Corpus Christi.

Aug. 29, 1975.

Rehearing Denied Sept. 30, 1975.

Frank B. Sheppard, Crain, Crain & Sheppard, Cuero, for appellant.

Kemper Williams, Jr., Cullen, Carsner & Williams, Victoria, for appellees.

## OPINION

BISSETT, Justice.

This is a real estate commission case. Darrell Cooper, a duly licensed real estate broker, filed suit against Edward L. Wildman and wife, Laura Mae Wildman (the Wildmans), to recover a real estate commission (plus attorneys' fees) under a written listing agreement for the sale of real property. The case proceeded to trial before a jury. At the conclusion of plaintiff's case, defendants rested. Both parties moved for an instructed verdict. Plaintiff's motion was denied, defendants' motion was granted, and judgment was rendered that plaintiff take nothing by his suit. Plaintiff has duly perfected an appeal from that judgment.

The principal issue presented by this appeal is whether or not the defendants had

the right to require the purchaser, produced by the plaintiff, to finance the purchase of the subject land with them. The plaintiff contends that he fully performed under the listing agreement when he produced a purchaser who was ready, financially able, and willing to buy the property at the price stated in the agreement for cash. The defendants claim that they were not bound to sell the land to such purchaser because the listing agreement gave them, the owners, the right to finance the sale, and that the prospective purchaser would not and did not agree to owner-financing.

■ Since the trial court instructed a verdict in favor of the Wildmans, defendants-appellees, we are required to view the evidence in the light most favorable to Cooper, plaintiff-appellant, the losing party in the court below, to indulge against the judgment every inference that can be possibly drawn from the evidence, and to disregard all evidence adverse to Cooper. *Seideneck v. Cal Bayreuther Associates*, 451 S.W.2d 752 (Tex.Sup.1970); *Bass v. General Motors Corporation*, 491 S.W.2d 941 (Tex. Civ.App.—Corpus Christi 1973, writ ref'd n. r. e.).

It has been held that where the plaintiff makes a prima facie case and the defendant fails or refuses to introduce any evidence which rebuts the plaintiff's proof, the trial court is required, upon motion duly presented, to instruct a verdict for the plaintiff. *Acme Letter Shop et al. v. State of Texas*, 342 S.W.2d 770 (Tex.Civ.App.—Austin 1961, writ ref'd n. r. e.); *Lesikar v. Lesikar*, 251 S.W.2d 555 (Tex.Civ.App.—Galveston 1952, writ ref'd n. r. e.). In the case at bar, after Cooper had concluded the presentation of his evidence and had rested, the Wildmans rested without introducing any evidence to rebut Cooper's proof. In disposing of this appeal, we consider only the evidence most favorable to Cooper, disregard all evidence adverse to him, and indulge against the judgment in favor of the Wildmans every inference that can be possibly drawn from the evidence.

The material facts are undisputed. On October 30, 1973, Mr. Wildman (Wildman), a real estate salesman who lived in Kerrville, Texas, came to the office of Mr. Cooper (Cooper) in Cuero, Texas, and told him that he wanted to sell his farm located near Thomaston, in DeWitt County, Texas. He did not have time to wait until a written listing agreement was prepared, but according to Cooper's testimony, Wildman told him that he wanted $30,000.00 for the property, that the sale would be made subject to an existing grass lease, and that he would reserve one-half of the minerals and one-half of the royalty for a period of 20 years. Based on that conversation, Cooper, the next day, prepared a one-page written listing agreement with writing on both sides of the page and dated it November 1, 1973.

The listing agreement, insofar as this appeal is concerned, gave Cooper the exclusive right for a period of 180 days from November 1, 1973, to sell (or exchange) the property described therein "at a price of $30,-000.00 or any other price or terms that the Owners may accept", and provided for the payment to Cooper of a real estate commission of 5% of the gross sales price of the property "if the Broker shall during the term of this agreement (1) Produce a purchaser ready, willing and able to buy said property at price above listed, or any other price Owner has agreed to accept . .." The listing agreement, except for an acknowledgement by the owner of a copy thereof, concluded with the sentence: "This Agreement . . . contains the entire agreement between them, and no representations or promises, oral or otherwise, not embodied herein shall be of force or effect". Signature lines for the owner and the broker were provided at the bottom of the front page.

On the back of the document appears blanks for the showing of certain statistical information and data. Under the printed words "Other Information", in addition to a recital that the seller shall retain ½ of minerals and ½ of royalty for a term of 20

years, appears the following words, hereinafter referred to as "the notation", to-wit:

"Seller will finance 80% to right person for 8½% for a term to be negotiated."

The agreement, in duplicate, with the above notation typed on the backside of the single-page instrument, was mailed to Wildman on November 1, 1973. Wildman, upon its receipt, struck out the word "exclusive", which appeared in the first paragraph and, immediately before the lines provided for signatures of the parties, typed in the words:

"The owner reserves the right to sell this property without obligation to the listing broker."

The agreement, as submitted by Cooper to Wildman and as changed by Wildman, was signed by Mr. and Mrs. Wildman, as owner, and was mailed back to Cooper, who received it on November 6, 1973. Cooper, as broker, signed both the original and the duplicate copy thereof, mailed the signed duplicate copy back to Wildman and kept the signed original for himself.

On November 7, 1973, Cooper showed the property to Mr. Harold H. Harris (Harris), who agreed to purchase the property for $30,000.00 cash, and subject to the existing grass lease on the land, and subject, also, to the aforesaid mineral and royalty reservation. A contract of sale, dated November 10, 1973, was then prepared by Cooper. It provided for the purchase price of $30,-000.00 cash, of which $3,000.00, as earnest money, was deposited by Harris with an escrow agent. The contract recited that the remaining $27,000.00 was to be paid "in cash to the seller upon the delivery of a general warranty deed."; that the sale was to be made subject to the then existing grass lease on the land; and that "Seller is to reserve one-half of the minerals and one-half of the royalty for a term of twenty years from the date of the sale." The contract of sale, which was signed by Harris (and his wife), as purchaser, and by Cooper, as broker, was mailed by Cooper to the

Wildmans for their signatures, as owner. They refused to sign it.

Cooper, on or about November 19, 1973, received a telephone call from Wildman, who, according to Cooper's undisputed testimony, told him:

" . . . he (Wildman) had talked to his—his tax man, and been advised he'd be smarter to finance a sale of the property. And the only way that he would sell the property would be if he could finance it."

and asked him:

" . . . to see if the Harrises would be interested in—in purchasing the property on the—with Seller financing."

Cooper then contacted Harris and inquired as to whether he would be willing to let Wildman "carry the note" on the property. Harris replied that "he wouldn't purchase it under those conditions, that he had cash money and that he wanted to buy it right out as it was originally agreed to."

Harris testified that he had $30,000.00 in cash when Cooper showed the land to him, and that he was, at all times, ready, willing and able to pay cash for the land. He was upset because the Wildmans refused to sell the property to him for cash. The earnest money deposit was returned to him by the escrow agent on December 3, 1973.

In response to questions concerning the reason for the typing of the notation on the back of the listing agreement, Cooper testified, in effect, that after Wildman had explained the terms of the desired sale of the property to him at their meeting on October 31, 1973, and as Wildman was leaving his (Cooper's) office, "he just turned and made the remark, 'well, I would finance it to the right man' ". Cooper said that this statement was the only reference which was made with respect to any "owner-financing" prior to the time that the contract of sale was signed by him and by Harris. Cooper further testified that he did not type the words contained in the notation on the backside of the listing agreement at the

request of Wildman, and that the only reason for doing so was "for my personal reference". Cooper was positive that Wildman, during the discussion on October 31, 1973, never "indicated that he wasn't interested in selling it (the land) if he could not finance it (the sale)."

█ The language of the listing agreement herein involved, whereby the property was listed for sale "at a price of $30,000.00 or any other price or terms that the Owner may accept" does not render the agreement void for uncertainty or vagueness. It clearly means that Cooper, the broker, would have to find a purchaser who was ready, willing and able to purchase the land for $30,000.00 cash, or at any other cash price or upon terms approved by the Wildmans, the owner. *Levenson v. Alpert*, 399 S.W.2d 955 (Tex.Civ.App.—San Antonio 1966, no writ). The word "or" in the above quoted language of the listing agreement is used in the disjunctive. Cooper was not required to satisfy both conditions; he could meet the requirements imposed on him by producing either a purchaser who was ready, willing and able to pay $30,000.00 cash for the land, *or* a purchaser who would have purchased the land at some other price and on terms that were acceptable to the Wildmans.

The proof shows that Cooper was a licensed real estate broker at all times pertinent to this case. The listing agreement that was signed by all parties meets the requirements of Tex.Rev.Civ.Stat.Ann. Art. 6573a, § 28. Cooper, in fact, through his efforts, did produce a purchaser (Harris) within the 180 day limit imposed by the listing agreement who was ready, willing and able to purchase the land for $30,000.00 cash. There is no evidence that the Wildmans sold the property at any time to anyone for any price. There is no evidence that Cooper failed "to conform to the listing agreement" or "departed from the instructions of the owner", as alleged by the Wildmans in their motion for an instructed verdict.

█ A duly licensed real estate broker, who is authorized to sell real property under a valid listing agreement, is entitled to the commission specified in the agreement when he produces a purchaser who is ready, willing and financially able to purchase the property at the cash price that the owner authorized the property to be offered for sale. This is but a rule of fairness and right. The owner cannot defeat the broker's right to the commission by refusing to consummate the sale. To allow the owner to refuse to complete the sale after a valid listing agreement has been signed by both the owner and the broker and a purchaser has been found by the broker who can and will pay the cash purchase price set out in the listing agreement, and yet deny to the broker the right to the commission specified in the agreement, is "a proposition not to be countenanced". *Goodwin v. Gunter*, 109 Tex. 56, 185 S.W. 295, 296 (Tex.Sup.1916); *Stolaroff v. Campbell*, 18 S.W.2d 838 (Tex. Civ.App.—El Paso 1929, no writ).

The notation on the back of the listing agreement with reference to owner-financing was adequately explained by Cooper. If there was any untruth or inaccuracy in Cooper's testimony, the defendant Edward L. Wildman, being in court and having heard such testimony, could have readily disputed the facts as related by Cooper. He did not do so, but instead, remained silent.

We hold that the notation did not give the Wildmans, as owners, the right to demand that a purchaser, produced by Cooper, finance the purchase of the land with them. The notation is no more than an expression that the owners would be agreeable to financing 80% of the sales price at 8½% interest provided they were satisfied with the prospective purchaser. It was not a condition of the listing agreement.

The failure to consummate the sale of the land to Harris is due solely to the default of the Wildmans. Cooper did everything required of him by the listing agreement. He is entitled to a recovery of 5% of $30,000.00, as a real estate commission.

■ Cooper is also entitled to recover reasonable attorney's fees. The term "reasonable attorney's fees", as that term is used in Tex.Rev.Civ.Stat.Ann. Art. 2226, has been construed by the appellate courts of this State to mean such fees as a litigant would pay his own attorney for prosecuting the case and not a speculative or contingent fee based on uncertainties. *Southland Life Ins. Co. v. Norton,* 5 S.W.2d 767 (Tex. Comm'n App.1928); *Wisznia v. Wilcox,* 438 S.W.2d 874 (Tex.Civ.App.—Corpus Christi 1969, writ ref'd n. r. e.).

■ It is well settled that a real estate broker's claim for commission due him under a valid listing agreement, where the services required by the agreement are actually furnished and rendered by the broker (as is the case at bar), is a claim for "personal services" within the meaning and purview of Tex.Rev.Civ.Stat.Ann. Art. 2226. *Shirey v. Albright,* 404 S.W.2d 152 (Tex.Civ. App.—Corpus Christi 1966, writ ref'd n. r. e.), approved in *Tenneco Oil Company v. Padre Drilling Company,* 453 S.W.2d 814, 820 (Tex.Sup.1970); *Texas Reserve Life Insurance Co. v. Security Title Company,* 352 S.W.2d 347 (Tex.Civ.App.—San Antonio 1961, writ ref'd n. r. e.); *Bradshaw v. Marcum,* 321 S.W.2d 352 (Tex.Civ.App.—Dallas 1959, writ ref'd n. r. e.); *Craft v. Netherton,* 276 S.W.2d 855 (Tex.Civ.App.—Austin 1955, no writ).

In the instant case, Robert B. Eyehorn, Jr., a licensed, practicing attorney, of Yorktown, DeWitt County, Texas, testified that he was acquainted with the customary fees of attorneys who practice in DeWitt County; that he had an opinion as to a reasonable fee for Cooper's attorney in this case; and that $500.00 would be a reasonable fee for legal services furnished Cooper. He was not cross examined by Wildman's counsel. No contradictory or rebuttal evidence concerning reasonable attorney's fees was introduced by the Wildmans.

It is conclusively shown by the record and stipulated by counsel for all parties to this appeal that Cooper made a written, formal demand on the Wildmans for his claimed commission of $1,500.00 for "personal services rendered", more than 30 days before this suit went to trial. Cooper, the plaintiff, was represented by an attorney to prosecute his suit, who did prosecute the same in Cooper's behalf. The unchallenged evidence is that $500.00 is a reasonable attorney's fee for the services of his attorney.

We hold that it was reversible error to grant an instructed verdict in favor of the Wildmans and to overrule Cooper's motion for an instructed verdict. All of Cooper's points of error are sustained.

The judgment of the trial court is reversed and judgment is here rendered that Darrell Cooper, plaintiff-appellant, do have and recover of and from Edward L. Wildman and Laura Mae Wildman, defendants-appellees, the sum of $2,000.00 (being $1,500.00 for the real estate commission earned by Cooper, and $500.00 for his attorney's fees), together with interest thereon from and after January 29, 1975, the date judgment was rendered in the trial court, and for all court costs.

Reversed and rendered.

## OPINION ON MOTION FOR REHEARING

The Wildmans, defendants-appellees, in their motion for rehearing, contend (for the first time in this appeal) that "the evidence conclusively showed no written contract between Wildman and Cooper" because Cooper's action in sending a new listing contract to them on November 8, 1973 "repudiated any listing contract previously signed by the parties." Accordingly, we have reviewed the evidence in its entirety. The contentions have no support in the record.

Cooper, upon receipt of the listing agreement dated November 1, 1973 (plaintiff's exhibit 2), which had been previously signed by the Wildmans, signed the same and mailed a signed copy thereof to the Wildmans on November 8, 1971. The following statements appear in the letter of transmittal, to-wit:

"Please find enclosed a copy of our listing agreement for your files.

Mr. Wildman, I would prefer to have an exclusive listing agreement on the property in lieu of the present agreement. I would be agreeable to raising the listing price to $32,000 if an exclusive agreement could be obtained. A new listing agreement is attached for this purpose. You and Mrs. Wildman are requested to sign and return the original of this agreement if you are agreeable to giving an exclusive listing at the higher price."

█ In order to repudiate a contract, the repudiating party must positively, unequivocally, and unconditionally refuse to perform the contract prior to the time fixed for performance. *Moore v. Jenkins,* 109 Tex. 461, 211 S.W. 975 (1919); *Surko v. Harrison,* 391 S.W.2d 115 (Tex.Civ.App.— Corpus Christi 1965, writ ref'd n. r. e.).

█ Cooper, in his letter of November 8, 1973, did not positively and unconditionally indicate that he had no intention of performing the listing agreement dated November 1, 1973. The proposed listing agreement was never signed by either Cooper or the Wildmans, and no evidence was offered by the Wildmans with respect thereto except to offer an unsigned copy thereof in evidence without comment or explanation. There is no evidence that the Wildmans were "agreeable to giving an exclusive listing at the higher price". At best, the enclosure can only be construed as a new and separate offer by Cooper to the Wildmans, which was never accepted by the latter.

At all times prior to the filing of the motion for rehearing in this Court, the Wildmans consistently took the position that the listing agreement, dated November 1, 1973 and sued on by Cooper was an existing written contract between the parties. Their motion for an instructed verdict was based solely on the ground that Cooper failed to prove compliance "with the terms of the listing agreement signed by the parties and dated November the 1st, 1973, in

that said listing agreement did state . . that the terms of said sale would have to be agreeable to the defense, to the defendants . . . and that such earnest money contract presented to the defendants by plaintiff proposed only for a sales contract for cash, which was not acceptable by the defendants". The thrust of the theory on which the action was defended prior to the filing of the motion for rehearing is further illustrated by the following quotations from the Wildmans' appellate brief, wherein their counsel represented to this Court:

"Appellees state that the entire listing agreement, plaintiff's exhibit 2, both front and back, comprised the agreement between the parties.

\*    \*    \*    \*    \*    \*

Briefly stated, the facts before the trial court were that appellant and appellees entered into a non-exclusive listing agreement which clearly indicated that appellees would finance the sale."

The evidence conclusively showed a valid written listing contract between the parties, dated November 1, 1973, which was breached by the Wildmans. There was no evidence of a repudiation of that listing agreement. The motion for rehearing is overruled.