

# IN THE
# TENTH COURT OF APPEALS

### No. 10-12-00294-CV

**CURTIS CAPPS,**

                                                            **Appellant**

 **v.**

**MARVIN GIBBS,**

                                                            **Appellee**

From the 272nd District Court
Brazos County, Texas
Trial Court No. 11-001452-CV-272

## MEMORANDUM  OPINION

In this trespass-to-try-title action, appellant, Curtis Capps, complains about a final judgment rendered in favor of appellee, Marvin Gibbs.  In two issues, Capps argues that the trial court erred in concluding that Gibbs:  (1) obtained legal and equitable title to the disputed property based on adverse possession because Gibbs failed to offer any evidence demonstrating that he possessed the property adversely; and (2) possessed the disputed property under "color of title."  We affirm.

## I. BACKGROUND

This dispute centers on ownership of Lot 5, Block 10 in the Washington Heights addition of the City of Bryan. The record indicates that Gibbs purchased the property on June 8, 1999, via a "Tax Resale Deed." However, Elnora Harris redeemed the property, as allowed by law for tax sales, on March 23, 2000. The "Tax Sale Redemption Deed" conveying the property from Gibbs to Harris on March 23, 2000, is designated in the record as Plaintiff's exhibit 3. Despite this, the record also contains a warranty deed executed on November 1, 1999. In this deed, Harris conveyed the property in dispute to Capps. Thus, it is undisputed that Capps owned the property after Harris executed the "Tax Sale Redemption Deed" on March 23, 2000.

The following day, March 24, 2000, Capps entered into an agreement with Gibbs for the sale of the property. The agreement was memorialized by a letter drafted by Capps, which stated the following:

> This is given as a receipt for a check in the amount of $2,437.50 received from Marvin Gibbs (to be credited as $2,500.00 toward purchase price of $7,500.00), balance of $5,000.00 to be paid at $150.00 per month at the rate of 11% interest per annum until paid in full. First payment will be due 4-1-00. Marvin Gibbs has signed a Redemption Deed to Elnora Harris[,] which has been notarized and given to Curtis Capps to be filed at the Brazos County Courthouse.

Capps signed the letter, but Gibbs did not.[1] In any event, both Gibbs and Capps testified that they had an agreement for the purchase of the property.

---

[1] Gibbs acknowledged at trial that he cannot read; however, his late wife, Mary, assisted him in reviewing the agreement. Nevertheless, the Fourteenth Court of Appeals has noted that: "Section 16.024 [of the Texas Civil Practice and Remedies Code] was intended to cover cases in which the evidence of right, though in writing, was not executed in the manner prescribed by law; so long as the document is not lacking in intrinsic fairness or honesty." *Oncale v. Veyna*, 798 S.W.2d 802, 805 (Tex. App.—Houston

At this point, the facts in this case are hotly contested. Apparently, a dispute arose in 2005, which resulted in Capps sending a letter to Gibbs on October 5, 2005. In this letter, Capps, who was now represented by counsel, stated:

> On or about April 26, 2005, you [Gibbs] received a letter from my client stating payment history and a balance owing and unpaid on the above property. No contact has been made by you and an outstanding balance of approximately three thousand dollars ($3,000.00) is still owed to my client.

> The purpose of this letter is to advise you that our client, Curtis Capps, wants you to vacate the above Property within ten (10) days of receipt of this letter if the above sum is not paid.

> Failure to remove yourself and your personal property from the Premises within that time will leave my client no alternative but to exercise his rights under the laws of the State of Texas through legal proceedings.

Gibbs disputed the amount allegedly owed and noted that the redemption of the property by Harris "restored significant title defects rendering Capps'[s] title defective."[2] In a responsive letter, Gibbs informed Capps that he would pay the amount he felt he owed, as long as he could get good title to the property.

For the next several years, attorneys for both parties exchanged letters, making offers and counteroffers for the property. However, Gibbs has remained on the property since June 8, 1999.

---

[14th Dist.] 1990, no writ). Moreover, Gibbs contends that he ratified the agreement by making payments to Capps. *See Thomson Oil Royalty, LLC v. Graham*, 351 S.W.3d 162, 166 (Tex. App.—Tyler 2011, no pet.) (stating that ratification occurs when a party recognizes the validity of the contract by acting under the contract, performing under the contract, or affirmatively acknowledging the contract).

[2] At trial, Capps admitted that he did not have any records to support his contention regarding the amount Gibbs owed on the note. He claimed to have destroyed those documents a while ago. In addition, Gibbs mentioned in his letter that: "It appears that Elnora Harris had no more than a one-third interest in the property by inheritance."

Gibbs and Capps continued to exchange letters in 2011, until Capps finally filed suit on June 6, 2011 in the 272nd Judicial District Court of Brazos County. Gibbs answered with a general denial and asserted counterclaims under the Texas Deceptive Trade Practices Act and under the three-year limitations period for adverse possession prescribed in section 16.024 of the Texas Civil Practice and Remedies Code. *See id.* § 16.024 (West 2002).

After a bench trial on January 27, 2012, the trial court rendered a judgment in favor of Gibbs. In its judgment, the trial court determined that:

1. An executory contract existed between Plaintiff [Capps] and Defendant [Gibbs] for the Defendant's purchase from Plaintiff of Lot Five (5), Block Ten (10), Washington Heights, City of Bryan, according to the plat thereof recorded in Volume 38, Page 398 of the Deed Records of Brazos County, Texas, also known as 1308 Red Oak, Bryan, Texas.

2. Defendant should have judgment in his favor on all his claims under Texas Civil Practice & Remedies Code Section 16.024, said claims being the three-year statute of limitations under color of title.

3. Defendant's Texas Deceptive Trade Practices Act claims against Plaintiff should be denied.

4. Requests by both parties for attorney's fees are denied.

IT IS THEREFORE ORDERED by the Court that Plaintiff CURTIS CAPPS take nothing by his suit, and that Defendant MARVIN GIBBS has legal and equitable title to the real property described above.

Capps subsequently filed a motion to set aside the judgment, which was denied by the trial court. This appeal followed.

## II. STANDARD OF REVIEW

When a bench trial is conducted and the court does not enter findings of fact and conclusions of law to support its ruling, all facts necessary to support the judgment are implied. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). Moreover, when findings of fact and conclusions of law are not filed by the trial court, the judgment of the trial court must be affirmed if it can be upheld on any legal theory that finds support in the evidence. *See In re W.E.R.*, 669 S.W.2d 716, 717 (Tex. 1984) (per curiam); *see also Doyle v. Teske*, No. 12-09-00359-CV, 2011 Tex. App. LEXIS 2360, at *7 (Tex. App.—Tyler Mar. 31, 2011, no pet.) (mem. op.). When, as here, the appellate record includes the reporter's record, the trial court's implied fact findings are not conclusive. *See Marchand*, 83 S.W.3d at 795; *see also Doyle*, 2011 Tex. App. LEXIS 2360, at *7. A trial court's implied findings of fact are reviewable for legal and factual sufficiency of the evidence by the same standards that are applied in reviewing evidence supporting a jury's verdict. *See Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1997).

In a legal-sufficiency review, we consider the evidence in the light most favorable to the verdict, indulging every reasonable inference in favor of the verdict. *See Autozone, Inc. v. Reyes*, 272 S.W.3d 588, 592 (Tex. 2008) (per curiam); *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 286 (Tex. 1998). To determine whether legally sufficient evidence supports a challenged finding of fact, we credit evidence that supports the finding if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not. *See Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 793 (Tex. 2006); *see also City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). The finder of

fact is the sole judge of credibility of the witnesses and the weight to be assigned to their testimony. *See City of Keller*, 168 S.W.3d at 819. The finder of fact is free to believe one witness and disbelieve another, and reviewing courts may not impose their own opinions to the contrary. *Id.* As such, reviewing courts must assume that the finder of fact decided all credibility questions in favor of the findings, and chose what testimony to disregard in a way that was in favor of the findings, if a reasonable person could do so. *Id.* at 819-20.

In addition, it is within the finder of fact's province to resolve conflicts in the evidence. *Id.* at 820. Consequently, we must assume that, where reasonable, the finder of fact resolved all conflicts in the evidence in a manner consistent with the findings. *Id.* Where conflicting inferences can be drawn from the evidence, it is within the province of the finder of fact to choose which inference to draw, so long as more than one inference can reasonably be drawn. *Id.* at 821. Thus, we must assume that the finder of fact made all inferences in favor of the findings if a reasonable person could do so. *Id.* As stated in *City of Keller*, the final test for legal sufficiency must always be "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *Id.* at 827. Anything more than a scintilla of evidence is legally sufficient to support the finding. *See Cont'l Coffee Prods. Co. v. Cazarez*, 927 S.W.2d 444, 450 (Tex. 1996).

In a factual-sufficiency challenge, an appellate court must consider and weigh all of the evidence. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam). The verdict should be set aside only if it is so contrary to the overwhelming weight of the evidence

as to be clearly wrong and unjust.  *Id.*  We may not pass upon the witnesses' credibility or substitute our judgment for that of the finder of fact, even if the evidence would support a different result.  *2900 Smith, Ltd. v. Constellation New Energy, Inc.*, 301 S.W.3d 741, 746 (Tex. App.—Houston [14th Dist.] 2009, no pet.).  If we determine the evidence is factually insufficient, we must detail the evidence relevant to the issue and state in what regard the contrary evidence greatly outweighs the evidence supporting the trial court's judgment; we need not do so when affirming the judgment.  *Id.*

### III.    ADVERSE POSSESSION

In two issues, Capps contends that the trial court erroneously relied on Texas Civil Practice and Remedies Code section 16.024 to award Gibbs the property because (1) Gibbs did not offer any evidence that he possessed the property adversely and (2) Gibbs never held the property under title or color of title.

### A.    Applicable Law

Adverse possession is "an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person" throughout the statutory period.  TEX. CIV. PRAC. & REM. CODE ANN. § 16.021(1) (West 2002).  The statute requires that such possession be "inconsistent with" and "hostile to" the claims of all others.  *Tran v. Macha*, 213 S.W.3d 913, 914 (Tex. 2006); *see Rhodes v. Cahill*, 802 S.W.2d 643, 645 (Tex. 1990) (noting that "possession must be of such character as to indicate *unmistakably* an assertion of a claim of exclusive ownership in the occupant" (emphasis in original)).  As the Texas Supreme Court mentioned in *Macha*,

> hostile use does not require an intention to dispossess the rightful owner, or even know that there is one. But there must be an intention to claim the property as one's own to the exclusion of all others; [m]ere occupancy of land without any intention to appropriate it will not support the statute of limitations.

213 S.W.3d at 915 (internal citations and quotations omitted); *see Bernal v. Chavez*, 198 S.W.3d 15, 19 (Tex. App.—El Paso 2006, no pet.).

Under the three-year adverse possession statute, a person must bring suit to recover real property held by another in peaceable and adverse possession under title or color of title not later than three years after the cause of action accrues. TEX. CIV. PRAC. & REM. CODE ANN. § 16.024. "Title" means "a regular chain of transfers of real property from or under the sovereignty of the soil." *Id.* § 16.021(4). "Color of title" means:

> a consecutive chain of transfers to the person in possession that:
>
> (A) is not regular because of a muniment that is not properly recorded or is only in writing or because of a similar defect that does not want of intrinsic fairness or honesty; or
>
> (B) is based on a certificate of headright, land warrant, or land scrip.

*Id.* § 16.021(2). "[A]ll the statute requires is a chain of muniments freely executed showing an equitable and beneficial right to the land, which do not lack intrinsic fairness or honesty." *Oncale v. Veyna*, 798 S.W.2d 802, 804 (Tex. App.—Houston [14th Dist.] 1990, no writ) (citing *Grigsby v. May*, 84 Tex. 240, 255, 19 S.W. 343, 348 (1892)).

"Peaceable possession" is defined as "possession of real property that is continuous and is not interrupted by an adverse suit to recover the property." *Id.* § 16.021(3). One seeking to establish title to land by virtue of the statute of limitations has

the burden of proving every fact essential to that claim by a preponderance of the evidence. *Rhodes*, 802 S.W.2d at 645. And inferences are never indulged in the adverse claimant's favor. *Bywaters v. Gannon*, 686 S.W.2d 593, 595 (Tex. 1985).

**B.     Color of Title**

In his second issue, Capps argues that Gibbs did not possess the property under color of title. Specifically, Capps claims that Gibbs did not proffer evidence of "substantial performance" of his contractual obligations, nor did he tender evidence demonstrating that Capps "wrongfully retained" legal title. In response, Gibbs, relying heavily on the Fourteenth Court of Appeals' decision in *Oncale v. Veyna*, asserts that he possessed the property under color of title. *See generally* 798 S.W.2d 802 (Tex. App.—Houston [14th Dist.] 1990, no writ). The *Oncale* case also involved a claim of limitation title to a piece of property by adverse possession under color of title. *See id.* at 803. In fact, the scenario in *Oncale* is substantially similar to the dispute in this case.

Oncale purchased a piece of property at a trustee's sale in May 1980. *Id.* Later, Oncale signed an earnest-money contract with the Haleys, who agreed that they would find a buyer for the property. *Id.* A day after signing the earnest-money contract, the Haleys sold the property to the Moncados under a contract for deed. *Id.* The Moncados occupied the property for nine months until they sold their interest in the property to Jose Veyna. *Id.* Veyna and his family immediately moved onto the property and lived there continuously from November 1981 to 1990. *Id.* Veyna also made numerous improvements to the property. *Id.*

In the coming years, problems arose because of judgment liens attached to the property. *Id.* Because of the judgment liens, Oncale was unable to deliver clear title to the property as he had agreed and a dispute arose between the Haleys and Oncale regarding the purchase price of the property. *Id.* Ultimately, Oncale refused to close the sale and deliver the deed to the property. *Id.* Oncale filed a declaratory-judgment action against the Haleys and Veyna to determine ownership of the property. *Id.*

Applying section 16.024 to determine that Veyna took possession of the property under color of title, the Fourteenth Court of Appeals noted that: "Section 16.024 was intended to cover cases in which the evidence of right, though in writing, was not executed in the manner prescribed by law; so long as the document is not lacking in intrinsic fairness and honesty." *Id.* at 805. The *Oncale* court concluded that:

> The transfer of Oncale's interest to the Haleys by their performance of the earnest[-]money contract, the transfer of the Haleys' interest to the Moncados by contract for deed, and the affidavit/deed by which the Moncados transferred their interest to Veyna were sufficient to constitute a consecutive chain of transfers that meet the requisites to establish color of title under which Veyna took possession of the property.

*Id.*

In the instant case, we have a similar chain of transfers. *See id.* Gibbs acquired the property pursuant to a tax-resale deed; Harris redeemed the property via a tax-sale redemption deed; Harris subsequently conveyed the property to Capps in a warranty deed; and Capps entered into an agreement with Gibbs for Gibbs to reacquire the property. We agree with Gibbs that a limitations defense under section 16.024 "comes into play when the party in possession has some difficulties in establishing legal or even

equitable ownership, or a limitations defense would not be needed." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.024; *see also Oncale*, 798 S.W.2d at 805. Accordingly, we conclude that a reasonable finder of fact could determine that this evidence is sufficient to constitute a consecutive chain of transfers that meet the requisites to establish color of title under which Gibbs took possession of the property. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.024; *see also Oncale*, 798 S.W.2d at 805. As such, we find the evidence to be sufficient in this regard. *See Reyes*, 272 S.W.3d at 592; *City of Keller*, 168 S.W.3d at 827; *see also Cain*, 709 S.W.2d at 176. We overrule Capps's second issue.

## C. Sufficiency of the Evidence Supporting the Trial Court's Adverse-Possession Finding

In his first issue, Capps alleges that Gibbs did not proffer any evidence demonstrating that he possessed the property adversely. We disagree.

Here, the parties agree that they entered into an agreement for Gibbs to purchase and secure title to the property from Capps for $7,500. Gibbs made an initial payment of $2,437.50, which was credited as $2,500 towards the $7,500 purchase price. Pursuant to the agreement, Gibbs was required to pay the remaining $5,000 balance by making payments of $150 per month with 11% interest until the amount was paid in full. At the time of the agreement, Gibbs was living on the property, and he has continuously lived on the property since 1999. In fact, in his testimony, Gibbs mentioned that he "put a water tap in. Put me a driveway in. Put a house on it. Put a hole in the back. Had the sewers all hooked up." Moreover, the record reflects that Capps permitted Gibbs to live on the property while making payments.

In any event, a dispute arose in 2005, regarding the amount Gibbs owed to Capps. In a letter sent by Capps's counsel on October 5, 2005, Gibbs was informed that he still owed $3,000 pursuant to the agreement. Counsel for Gibbs and Capps exchanged numerous letters from 2005 to 2011 regarding the amount owed under the agreement and to make offers and counteroffers to settle the dispute. Regardless, what is clear from the testimony is that Gibbs stopped paying under the agreement in March 2006. Gibbs believed that he had paid "all what I was supposed to pay him." Obviously, Capps believed that Gibbs still owed money under the agreement, though he acknowledged in open court that he no longer has any payment records regarding this property.

A person permissively occupying property must repudiate the permissive occupancy by a visible and unequivocal act of adversity in order to begin the running of the periods required for adverse possession to secure title in the adverse possessor. *See McLaren v. Beard*, 811 S.W.2d 564, 569 (Tex. 1991) ("Repudiation thus establishes the point at which adverse possession commences in the case where possession was initially permissive."); *see also Baughn v. Capps*, No. 10-09-00111-CV, 2010 Tex. App. LEXIS 1580, at **8-9 (Tex. App.—Waco Mar. 3, 2010, no pet.) (mem. op.) ("Where the original use of the land in controversy is permissive, it is presumed that the continued use thereof is also permissive in the absence of notice to the true owner of the repudiation of such permissive use and the assertion of an adverse claim."); *Griffin v. Watley*, No. 07-99-0295-CV, 2001 Tex. App. LEXIS 1786, at *6 (Tex. App.—Amarillo Mar. 15, 2001, no pet.) (not designated for publication). "[R]epudiation must be plain,

positive, and clear-cut" or the "permissive occupant" is "estopped from denying the title of the owner." *Commander v. Winkler*, 67 S.W.3d 265, 270 (Tex. App.—Tyler 2001, pet. denied). "[N]otice can be inferred, or there can be constructive notice." *Natural Gas Pipeline Co. of Am. v. Pool*, 124 S.W.3d 188, 194 (Tex. 2003). To repudiate a contract, the repudiating party must positively, unequivocally, and unconditionally refuse to perform the contract prior to the time fixed for performance.[3] *See Cooper v. Wildman*, 528 S.W.2d 80, 86 (Tex. Civ. App.—Corpus Christi 1975, no writ); *see also Munoz v. Witt*, No. 10-07-00010-CV, 2008 Tex. App. LEXIS 7296, at *10 (Tex. App.—Waco Aug. 27, 2008, no pet.) (mem. op.).

Assuming that Capps is correct that Gibbs still owed money under the agreement, a reasonable finder of fact could have concluded that Gibbs's refusal to make additional payments in March 2006 constituted a repudiation of the agreement and alerted Capps that Gibbs's continued possession of the property under color of title was hostile in nature.[4] *See McLaren*, 811 S.W.2d at 569; *Cooper*, 528 S.W.2d at 86; *see also Capps*, 2010 Tex. App. LEXIS 1580, at **8-9; *Munoz*, 2008 Tex. App. LEXIS 7296, at *10. Thus, Gibbs's adverse-possession claim accrued in March 2006. *See McLaren*, 811 S.W.2d at 569; *see also Capps*, 2010 Tex. App. LEXIS 1580, at **8-9. Moreover, the record indicates that Capps did not bring suit against Gibbs to recover the property until June

---

[3] Black's Law Dictionary defines "repudiation" as "[a] contracting party's words or actions that indicate an intention not to perform the contract in the future; a threatened breach of contract." BLACK'S LAW DICTIONARY 1047 (7th ed. 2000).

[4] In the event that Gibbs is correct regarding the payments under the agreement, Gibbs still wins, as he would have satisfied the conditions of the agreement and obtained title to the property.

6, 2011, which was more than five years after Gibbs's possession of the property became hostile. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.024.

Considering the evidence in the light most favorable to the trial court's judgment, we conclude that a reasonable finder of fact could conclude that Gibbs was in peaceable and adverse possession of the property under color of title since March 2006. *See id.*; *McLaren*, 811 S.W.2d at 569; *see also Capps*, 2010 Tex. App. LEXIS 1580, at **8-9. We further conclude that a reasonable finder of fact could have concluded that because Capps did not file suit against Gibbs to recover the property within three years of March 2006, Gibbs obtained legal and equitable title to the property pursuant to Texas Civil Practice and Remedies Code section 16.024—the three-year adverse possession statute. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.024; *McLaren*, 811 S.W.2d at 569; *see also Capps*, 2010 Tex. App. LEXIS 1580, at **8-9. Accordingly, we hold that the trial court's judgment is supported by legally-sufficient evidence. *See Reyes*, 272 S.W.3d at 592; *City of Keller*, 168 S.W.3d at 819-21, 27; *Cazarez*, 927 S.W.2d at 450.

In addition, after considering all of the evidence in the record, we cannot say that the trial court's judgment is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Cain*, 709 S.W.2d at 176. As such, we hold that the evidence supporting the trial court's judgment is factually sufficient. *See id.* We overrule Capps's first issue.

## IV. Conclusion

Having overruled Capps's issues on appeal, we affirm the judgment of the trial court.

AL SCOGGINS
Justice

Before Chief Justice Gray,
    Justice Davis, and
    Justice Scoggins
Affirmed
Opinion delivered and filed April 18, 2013
[CV06]